UNITED STATES, Appellee,

v.

Charles W. WATSON, Jr., Airman First
Class U. S. Air Force, Appellant.

Dkt. No. 39,345.
ACM 22637.

U. S. Court of Military Appeals.

Oct. 5, 1981.

For Appellant: *Major Wade B. Morrison* (argued); *Colonel Larry G. Stephens* (on brief).

For Appellee: *Captain Michael J. Hoover* (argued); *Colonel James P. Porter, Major Robert T. Mounts* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On October 9–10, 1979, at Lackland Air Force Base, Texas, appellant was tried by general court-martial with members. Pursuant to his pleas, he was found guilty of seven specifications of larceny and one specification of unauthorized absence, in violation of Articles 121 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 886, respectively. Contrary to his pleas, he was found guilty of one specification of wrongful possession of marihuana, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court-martial sentenced Watson to a dishonorable discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to Airman Basic. The convening authority approved the findings and sentence; but, for errors in the sentencing procedure,[1] the United States Air Force Court of Military Review subsequently reduced the confinement to 2 years.

We granted review (9 M.J. 418) on this single issue, which concerns only the charge that appellant wrongfully possessed marihuana:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ALLOWING THE GOVERNMENT TO IMPROPERLY BOLSTER THE CREDIBILITY OF AN UNDISCLOSED INFORMANT WHO DID NOT TESTIFY AT TRIAL.

I

To prove that Watson committed the possession offense, trial counsel relied on the testimony of Special Agent Picciuti of the Air Force Office of Special Investigations (OSI), who had searched a barracks room assigned to appellant and an Airman Torres. There he had discovered marihuana "in a field jacket bearing Watson's name, in a locker apparently assigned to Watson." The agent had inferred that the locker was assigned to appellant because "the clothing in there bore Watson's name; personal letter, bills and such on the shelf in that locker bore Watson's identification data." While "[t]here were dozens of items of clothing in the locker"—five or six with appellant's name—"[n]o clothing . . . bore any other name, other than Watson."

On cross-examination, Agent Picciuti could not recall whether the locker was locked or even had a lock. When asked whether "anyone in . . . [appellant's] room would have had open access to his locker," the witness replied, "There was no one in Airman Watson's room when I entered." He conceded that Watson had lived off-base in December, two months before the search. During his cross-examination, the witness confirmed that the locker was searched after he had been told by an undisclosed informant "that the marihuana would be found in clothing hanging in that locker."[2]

On redirect the agent testified, without defense objection, that he had prior dealings with the same informant and on each occasion, the information provided was accurate. Moreover, he had "verified with . . . a local police department somewhere in the United States—where the individual

---

1. The court reassessed the sentence because during the presentencing stage a letter of reprimand and "[o]ther material consisting of non-recommendations for promotion or decorations" had been improperly admitted into evidence and the prosecution had been allowed to impeach the veracity of appellant, who had made only an unsworn statement.

2. Before entering his pleas, appellant moved for disclosure of the identity of the informer who provided the Air Force Office of Special Investigations (OSI) with the tip on which the search authorization had been based. Since the defense counsel did not satisfy the military judge that disclosure of the informer's identity was needed by appellant to defend as to the issue of guilt, *cf.* para. 151*b*(1), Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Hawkins*, 6 U.S.C.M.A. 135, 19 C.M.R. 261 (1955), the motion was denied. We do not consider the correctness of this ruling.

had lived previously ... that he had been reliable in several situations and never had provided them with any false information."

On recross-examination, the witness confirmed that the informant had "stated that he was actually in ... [appellant's] room" when he observed the marihuana and that other people were also there. In turn, a court member inquired whether Special Agent Picciuti had ever questioned any other persons who had been present in Watson's room at the time of the informant's observations. The witness replied:

I took a statement from an Airman Chamblee, I believe it was, and Airman Chamblee was one of the people that I had identified as being in the room sometime during that morning while Watson allegedly was using this marihuana; and Chamblee told me that he in fact saw Watson—

At this point the trial counsel interrupted to object and the military judge on his own motion instructed the court members to "cast out of ... [their] mind any inference of any other misconduct." The trial counsel then brought out that Agent Picciuti had interviewed an Airman Chamblee and appellant's roommate, Airman Torres. Thereupon, the following colloquy occurred between trial counsel and the witness:

ATC: And did those interviews lead you anywhere regarding the nature of possibly filing charges?

WIT: I'm sorry—filing charges towards Watson or towards someone else?

ATC: Towards someone else.

WIT: No.

Later a court member adduced testimony from Picciuti that a five hour lapse had occurred from the time the informant had contacted him until the search.

On the basis of Picciuti's testimony and a stipulation concerning the laboratory analysis of the 19 grams of marihuana found in

the locker, the prosecution rested its case. The defense offered no evidence on the charge.

## II

In his review the staff judge advocate recognized that portions of Picciuti's testimony were inadmissible. For example, he noted that at one point the prosecution apparently "was attempting to bolster the credibility of the informant by testimony of opinion and reputation as to the informant's character for reliability for truth and veracity," and then, he posed the cogent inquiry:

However, in this case, the confidential informant never testified at the trial so how could his testimony be considered impeached warranting testimony of reliability to bolster the informant's credibility?

Nevertheless, the staff judge advocate came to the conclusion that the evidence was so clear and compelling that appellant could not have been prejudiced by the inadmissible evidence. In affirming the findings, the Court of Military Review took a similar position. Likewise, appellate government counsel, while conceding that error occurred, insist that appellant was not prejudiced thereby.

Certainly, the concession is appropriate that inadmissible evidence was received. Since the undisclosed informant never testified, there was no occasion for establishing his reliability in the trial of the issue of guilt.[3] Indeed, had the Government rather than the defense initially introduced Picciuti's testimony that he was searching the locker because of a specific report from the informant, an objection would have been in order, for in practical effect such evidence brings to the attention of the court members a statement by an undisclosed informer who is not testifying subject to cross-examination.[4]

---

**3.** However important an informer's reliability may be in determining whether a search was properly authorized and the fruit admissible— an issue usually dealt with in an Article 39(a), 10 U.S.C. § 839(a) session—its relevance ceases at that point unless the informer himself

appears as a witness concerning the issue of guilt.

**4.** Presumably the defense was seeking to suggest to the court members that the informer could be so specific in his tip because he had

■ As the trial counsel recognized, it was error to allow the testimony by Picciuti as to what Airman Chamblee had told the OSI concerning appellant's possession or use of marihuana. However, the inadmissibility of the evidence was rooted in its hearsay character—and not merely in the fact that it adverted to uncharged misconduct.[5]

■ Furthermore, there was no basis for admitting testimony that, after interviewing two other airmen, the agent had not preferred charges against anyone other than Watson. Aside from the usual immateriality of evidence that charges have not been preferred against anyone else, there is an objectionable hearsay characteristic to such testimony, since it invites the court members to speculate that the persons being interviewed by the OSI had identified Watson as the sole possessor of the marihuana.

■ Appellate government counsel contend that, in view of the defense's failure to object to any of the questionable evidence, appellant cannot now take advantage of its erroneous reception. However, under the then applicable Manual provisions, hearsay evidence did not become competent merely because of the failure to object. Para. 139a, Manual for Courts-Martial, 1969 (Revised edition). *Accord*, para. 139a, Manual for Courts-Martial, United States, 1951. Furthermore, we are unable to discern any trial tactic which would imply a conscious choice by defense counsel to have the hearsay evidence in the record.

### III

■ Accordingly, the only question that remains concerns prejudice. The Court of Military Review used the test of "clear and compelling" evidence of guilt apart from that which was tainted. Arguably, because some of the testimony may infringe upon appellant's sixth amendment right of con-

frontation, the test to be employed might be proof beyond reasonable doubt that the error could not have contributed to the appellant's conviction. However, whichever test is employed, reversal is required, for the evidence simply is not that "clear and compelling." Appellant was not the only person regularly assigned to the barracks room, and it was never established that his locker was locked or even had a lock. The record is unclear as to whether appellant still maintained an off-base residence at the time of the search, as he had done a few weeks before. Thus, the basis is weakened for inferring his conscious possession of the marihuana. While the evidence of guilt is ample to meet the standard of legal sufficiency, not every reasonable person would conclude that the Government had excluded the possibility that some other person—such as appellant's roommate, Torres, or the undisclosed informant—had placed the marihuana in appellant's locker for safekeeping without his being aware thereof.

### IV

The decision of the United States Air Force Court of Military Review is reversed as to the findings of guilty of Charge II and its specification and the sentence. Charge II and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to the Court of Military Review for reassessment of the sentence based on the remaining findings of guilty.

Judge FLETCHER concurs.

COOK, Judge (dissenting):

I agree with the Chief Judge that improperly admitted hearsay evidence does not become competent evidence because the trial defense counsel did not object. Paragraph 139a, Manual for Courts-Martial,

---

planted the marihuana in the locker. If this contention had been more specifically urged earlier in connection with the motion to disclose the informer's identity, the military judge might have taken a different view of that motion.

5. The judge should have instructed the court members to completely disregard any portion of the answer of the witness which related to the contents of any statement by Airman Chamblee. Instead, he only gave an instruction on uncharged misconduct.

United States, 1969 (Revised edition). However, in my opinion, the failure to object waived any error as to its admission into evidence. *See* my separate opinion in *United States v. Zone*, 7 M.J. 21, 22 (C.M.A. 1979); Mil.R.Evid. 103(a)(1). The distinction is that the appellant argues on appeal that the receipt of the evidence had a prejudicial impact on the court members; he has not challenged the sufficiency of the remaining evidence to sustain a finding of guilty. I believe that waiver is particularly appropriate here where the trial defense counsel initiated the inquiry that led to the receipt of the hearsay evidence. Accordingly, I would affirm the decision of the United States Air Force Court of Military Review.