UNITED STATES

v.

Raymond Anthony CARMEL, 432 15 4241, Seaman Recruit (E–1), U. S. Navy.

NCM 77 1498.

U. S. Navy Court of Military Review.

Sentence Adjudged 4 Feb. 1977.

Decided 16 Jan. 1978.

CAPT G. M. Potter, USMC, Appellate Defense Counsel.

COL Clayton H. Parker, USMCR, Appellate Government Counsel.

MAJ D. A. Higley, USMC, Appellate Government Counsel.

Before NEWTON, GLADIS and GRANGER, JJ.

GRANGER, Judge:

Appellant was convicted of 14 specifications variously charging him with unauthorized absence, disobedience, disrespect, and striking a petty officer. His sole assignment of error is that his pretrial restraint was illegal.

On 3 January 1977, appellant was assigned to the USS BAINBRIDGE and was charged with five minor unauthorized absences, possession of marijuana, disrespect, and a number of orders violations. At a pretrial hearing, appellant objected to being tried within 3 days of service of charges. Article 35, Uniform Code of Military Justice, 10 U.S.C. § 835. As his ship was going to sea the following day, the court-martial was set for trial in early February, when the BAINBRIDGE would again be in port.

Appellant's military record reflected a rich history of dissidence and misconduct. Harboring considerable reluctance to take appellant to sea, the Commanding Officer of the BAINBRIDGE prevailed upon the Commanding Officer, Naval Support Activity (NSA) Seattle to accept appellant in a temporary duty status pending the ship's return to port. Meanwhile, appellant ab-

sented himself without authority for 15 hours, returning to the BAINBRIDGE the morning of 4 January. He was transferred to NSA Seattle and was promptly placed in restriction.

Appellant remained restricted until 20 January, when he was confined. By order of a military magistrate, he was released from confinement on 28 January and returned to restricted status until 31 January, when he was confined until his trial.

■ Considering first the legal propriety of appellant's two periods of pretrial confinement, the evidence shows that appellant committed a number of serious offenses while restricted, culminating in the assault of a petty officer master-at-arms. The officer who ordered appellant's confinement on 20 January was aware of these offenses and appellant's prior misconduct, and confined appellant because he considered it necessary to insure appellant's presence for trial, among other reasons. Lesser forms of restraint had proven ineffective. We find no irregularity in this first period of confinement, it being harmonious with the tenets of *United States v. Heard*, 3 M.J. 14 (C.M.A.1977).

■ Shortly after being released from confinement on 28 January, appellant allegedly assaulted and injured another petty officer master-at-arms, and was again confined. The military judge declined to rule on the legality of this period of pretrial confinement because that issue was then pending before a military magistrate and the judge was reluctant to encroach upon the magistrate's functions. In this regard, the trial judge erred. Defense counsel laid before him an issue clearly impacting upon the disposition of appellant's case. The le-

gality of his pretrial confinement was a matter to be considered in determining appropriate punishment, and the issue should have been litigated. It was a matter within the judge's purview. *See Courtney v. Williams*, 24 U.S.C.M.A. 87, 51 C.M.R. 260, 1 M.J. 267 (1976); *Porter v. Richardson*, 23 U.S.C.M.A. 704, 50 C.M.R. 910 (1975); *Phillippy v. McLucas*, 23 U.S.C.M.A. 709, 50 C.M.R. 915 (1975); *Milanes-Canamero v. Richardson*, 23 U.S.C.M.A. 710, 50 C.M.R. 916 (1975). It is true that the assault which resulted in appellant's confinement was not referred to this court-martial. It is not necessary to decide whether the military judge has power to rule upon pretrial confinement issues in the absence of such referral, *see* Cooke, *The United States Court of Military Appeals, 1975–1977: Judicializing the Military Justice System*, 76 Mil.L.Rev. 43, 84–87 (1977), because the testimony of the confining officer makes it clear that he predicated his decision not only upon that assault but upon appellant's prior record of misconduct, which encompassed the offenses upon which appellant was tried herein. The trial judge's failure to consider this matter did not prejudice appellant, however, as the testimony on the circumstances leading to appellant's 28 January confinement provides probable cause to confine him and amply supports his continued confinement through his trial.

There remains at issue the legal propriety of appellant's pretrial restriction from 4 to 20 January. We find that this restriction was punitive and illegal.

The terms of appellant's restriction were set out in his restriction order, the text of which is reproduced below.[1]

1. 1. You are hereby Restricted to the Naval Support Activity (NAVSUPPACT), Seattle, Washington. Additionally, you are Restricted from (that is to say, you may not enter) the following areas: NAVSUPPACT Special Services (not including the Station Library), all NAVSUPPACT Clubs, the Station Theater, Admin Hold Dorm in Building 223, and all areas within Building 224 and Building 9, with the exception of the Enlisted Dining Hall, the Station Chapel and the Navy Legal Services Of-

fice. You are also restricted from the Navy Exchange Cafeteria, TV lounges and all private rooms. You will remain in this status until you are released by written order from proper authority. Leaving the assigned area (NAVSUPPACT), or entering those areas from which you are restricted without proper authority, or failure to comply with the following regulations constitutes a Breach of Restriction and charges will be preferred against you under the UCMJ.

Testimony elicited on appellant's motion for appropriate relief revealed these additional facts:

The eight daily musters consumed approximately 10 minutes each, with the exception of the 2130 muster, which entailed a "full inspection" of restricted personnel by the Command Duty Officer, and an opportunity to air grievances. These proceedings usually took approximately 30 minutes. Every 30 minutes during the night a master-at-arms, using a flashlight, would visually ensure that each restricted person was in his bed. During the day, if not assigned to a working party, restricted personnel were restricted to the same "restricted dorm" in which they were berthed. After duty hours, they could go outside in the immediate vicinity of the building for recreation and fresh air but had to sign out and in. To go anywhere else, including the dining facility, a restricted person had to fill out a "walking chit," have it approved, carry it on his person at all times, and have it signed by a party at his destination, as well as sign out and in. A restricted person could not go to the exchange unless escorted by a master-at-arms, with approval of the chief master-at-arms, and he was limited as to what he could purchase (toilet articles, candy, cigarettes, magazines). No regular program was established in this regard, such trips apparently being made at the discretion of the individual master-at-arms. Haircuts for restricted personnel were given in the building in which they were restricted or in the brig. A restricted person could get a haircut in the exchange barbershop if escorted by a master-at-arms. Escort was also required to go to the banking facility on base.

Appellant spent three or four short interludes locked in a holding cell approximately 6 feet square. This facility, known as "the cage," was used to hold sentenced prisoners

2. You are hereby assigned to perform duties as assigned by the Chief Master-at-Arms between the hours of 0630 and 1630. Since these duties will include custodial tasks inside the physical interior of Building 223 between the hours of 0630 and 1630, you are hereby ordered not to leave the physical interior of Building 223 unless ordered to do so by proper authority. If you leave the physical interior of Building 223 between the hours of 1630 and Taps, you must sign out with the Duty Master-at-Arms.

3. You shall not consume or possess any alcoholic beverages or enter any area where alcoholic beverages are served, consumed or stored except when so ordered by competent authority. The term "Alcoholic Beverages" includes bear and wine.

4. You shall muster daily with the Duty Master-at-Arms in the Restricted Dorm, Building 223, at the following times: 0645, 0800, 1300, 1600, 1800, 1900, 2030 and 2130. You will be in your bunk at 2300 and be mustered in your bunk at half hour intervals thereafter from 2300 to Reveille. Sweepers will be held at the following times: 0645, 1800 and 2130.

5. Taps will be strictly observed at 2200 Sunday through Friday, and on Saturday nights at 0100 Sunday morning. Reveille goes at 0600 daily except Sunday which will have late sleepers until 0800 and first muster at 0915. When Reveille is passed you will get out of your bunk and get dressed without delay.

6. You will remain in the Working Uniform of the Day from Reveille until Taps. The Working Uniform of the Day for Restricted personnel is clean, unmutilated dungaree, shirt and trousers, regulation belt and buckle, White tee shirt, Black shoes, Black socks and a Blue baseball cap, unless otherwise prescribed.

7. Visitors will be permitted only on Saturdays, Sundays and holidays and then only between 0900 and 1600 hours and shall be limited to members of your immediate family. These visitors will be permitted only upon approval by the Duty Master-at-Arms of a Special Request Chit.

8. While you are on Restriction: your automobile may not be operated by yourself or anyone else on board NAVSUPPACT, Seattle; if you desire to leave your automobile parked in the designated restricted men's parking area, you must turn all of your car keys into Security who will provide you with a receipt. Security will take custody of your keys, but not your automobile. You may arrange to have your automobile stored off NAVSUPPACT, Seattle at your own expense.

9. You shall be governed by the orders of the Station Master-at-Arms and you shall perform such duties as he may assign.

10. Grievances on the part of Restricted personnel shall be reported to the Chief Master-at-Arms during working hours or the Command Duty Officer at the 2130 muster.

11. You shall carry a copy of these orders upon your person at all times.

12. All portions of these Restriction Orders must be adhered to. Violations of any part of these orders is a violation of lawfully given orders and will result in charges being preferred against you under the UCMJ.

awaiting transfer to confinement and to hold restricted personnel who created disturbances.

Persons restricted by sentence of court-martial or as a result of nonjudicial punishment, and those in pretrial restriction were comingled. All were issued the same restriction order set forth *supra*. All were quartered in the same "restriction dorm," and there was no distinction made in their treatment.

■ Under the circumstances, we consider appellant's restriction illegal. We do not question the propriety of the commander placing appellant in restriction. The information available to him afforded probable cause for him to conclude, as he did, that some limitations were necessary to ensure appellant's continued presence, avoid temptation for further transgressions, and provide the close supervision appellant obviously needed.

Appellant's conditions of restraint, however, amounted to arrest, if not confinement. *United States v. Weisenmuller*, 17 U.S.C.M.A. 636, 38 C.M.R. 434 (1968). Article 13, Uniform Code of Military Justice, provides that no person held for trial may be subjected to punishment or penalty other than arrest or confinement, nor shall the arrest or confinement imposed be any more rigorous than the circumstances require to insure his presence. The conditions here imposed were oppressive, and some of the terms of appellant's restraint bore no relation to the purposes of his restriction and were unnecessary to ensure his presence.

■ The essence of restriction is *moral* restraint. *United States v. Self*, No. 77 0548 (N.C.M.R. 15 August 1977). Another salient distinction between restriction and confinement is that the former does not carry with it the stigma of being a prisoner. *United States v. McKnight*, 20 C.M.R. 520 (N.B.R.1955). The severe curtailment of appellant's freedom transcended the bounds of moral restraint. His constant, enforced association with sentenced convicts and persons undergoing nonjudicial punishment in the "restriction dorm," and the requirement for master-at-arms "escorts" outside that building stigmatized appellant as one undergoing punitive restraint. We therefore find appellant's pretrial restraint to be illegal, and it should have been so considered by the trial judge.

■ The appropriate remedy to cure the error discussed above is reassessment of the sentence. *See United States v. Pringle*, 19 U.S.C.M.A. 324, 41 C.M.R. 324 (1970); *United States v. Nelson*, 18 U.S.C.M.A. 177, 39 C.M.R. 177 (1969). While we have reached a different conclusion than did the military judge on the issue discussed above, his trial of this case was otherwise commendable. His rulings and legal bases for those rulings are clearly set forth in the record and show that, while he did not consider appellant's pretrial restriction illegal, he did take it into consideration in reaching punishment. Appellant has not been severely prejudiced. He has served his adjudged confinement. Remission of forfeitures will afford adequate remedy.

The findings are affirmed. Upon reassessment of the sentence, we affirm so much thereof as adjudges confinement at hard labor for 3 months and separation with a bad conduct discharge.

Senior Judge NEWTON concurs.

Judge GLADIS (absent).