## UNITED STATES

### v.

### Michael F. SOUTHERS, 452 31 8287, Engineman Fireman Apprentice (E–2), U. S. Navy.

### NMCM 81 2560.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 11 May 1981.

Decided 16 Feb. 1982.

LT Georgia L. Winstead, JAGC, USNR, Appellate Defense Counsel.

LTCOL J. Dewayne Littlejohn, USMC, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and MAY, JJ.

MAY, Judge:

Appellant was convicted following his pleas of a violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, an unauthorized absence of approximately 22 months. He was sentenced to a bad-conduct discharge, confinement at hard labor for three and one-half months, forfeiture of $334 per month for a period of three months, and reduction to pay grade E–1. The convening authority approved the sentence and pursuant to the terms of a pretrial agreement, suspended all confinement at hard labor in excess of 75 days for a period of six months from the date of trial.

Additionally, the convening authority in his action granted 23 days administrative credit against the confinement to be actually served. This administrative credit was ordered in response to a ruling of the trial judge following the sentencing portion of the trial. That ruling was in response to trial defense counsel's motion for appropriate relief for day for day administrative credit, based upon the asserted existence of punitive restraint conditions imposed upon the appellant prior to trial. The trial judge, after considering documentary evidence and a stipulation of fact related to the defense motion, and both government and defense counsel argument, granted the motion and ordered one-third credit for the appellant's pretrial restraint as follows:

The court will come to order. The court will state its ruling on the motion at this time. The motion for appropriate relief is granted in part as follows and consonant with the following findings:

The court finds that the accused was resident in Barracks # 347, NETC, Newport, Rhode Island from 4 March 1981 through 11 May 1981. And that during this period he was subject to the regulations as set forth in Defense Exhibit A, with the exception of Rule 5, and Enclosure 5 of Defense Exhibit A during the period 6 March to 11 May 1981. With regard to this entire period of purported non-restraint status the following illegal and improper conditions were imposed solely because the accused was in a disciplinary status and render that period punitive in violation of Article 13, Uniform Code of Military Justice, especially when considered with all the other limitations placed on those residing in Barracks # 347, who are in a purported non-restraint status.

First, the requirement that the accused march in formation to meals at the galley.

Second, the prohibition from the possession of radios, TVs, tape decks, stereos or guitars in the crew's berthing spaces. Third, with respect to the period of 4 and 5 March 1981, only, the prohibition from lounging in one's bunk.

With regard to the entire period of 4 March 1981 to 11 March 1980—I'm sorry—to 11 May 1981, that is, this period of pretrial residency status in Barracks # 347 the court finds no other actionable improprieties or illegalities other than those that have been stated regarding the conditions of residencey but does note without further comment that there is precariously little distinction between restricted and non-restricted personnel.

The matters noted by the court as being the basis for granting the motion are easily susceptible to correction without any degradation of the legitimate goals of pretrial treatment of personnel. The fact is that they are illegal and improper, thereby requiring action by this court. Because there were 69 days of improper pretrial residency status the military judge judicially orders that the accused be given one-third day credit against any confinement at hard labor adjudged for each day of pretrial punitive residency status, that is, 23 day's credit for the pretrial residency status. Such credit to be given against his sentence to confinement at hard labor.

This administrative credit is to be deducted from the service of confinement at hard labor adjudged in this case. Are there any other matters to be brought before this court?

ATC: None by the Government, Your Honor.

DC: The defense has none, Your Honor.

MJ: The court is adjourned.

Appellate defense counsel assigns error because of the military judge's failure to grant full day for day credit for the period of pretrial restraint.

Appellate government counsel strenuously argues, as did government trial counsel, that no form of administrative relief was warranted and that the restraint conditions imposed upon appellant prior to trial were nonpunitive. We agree and find no merit in the assignment of error. The nature of the military judge's ruling, however, compels further discussion.

### Pretrial Restraint

 The essence of the concept, which finds illegal the imposition of restraint conditions akin to that of sentenced military members, is that the individual service member has, thereby, been punished prior to adjudication of guilt or innocence and prior to a legal determination of appropriate punishment. *United States v. Bayhand,* 6 U.S.C.M.A. 762, 21 C.M.R. 84 (1956); *United States v. Carmel,* 4 M.J. 744 (N.C.M.

R.1978); *United States v. Self,* No. 77 0548 (N.C.M.R. 15 Aug. 1977); Article 13, UCMJ, 10 U.S.C. § 813, Paragraph 18*b* (3), *Manual for Courts-Martial,* 1969 (Rev.). Conditions of restraint which have impacted upon a service member in a manner indistinguishable from those serving sentences for adjudicated criminal offenses may of course, be improper and "punitive," regardless of the administrative characterization of such persons. Status categories such as "legal hold", "pending investigation," and "awaiting disciplinary action" do not shield government officials from judicial determinations of illegal, punitive treatment.

In *Bayhand, supra,* the Court of Military Appeals held that orders given to an accused soldier while he was held in pretrial confinement which would have required that he work under guard, alongside a sentenced prisoner with a pick and shovel in a drainage ditch, attired in a fatigue uniform with a white arm band around the arm—a uniform identical to that of the sentenced prisoner—and that several days later, required that he work with other prisoners, under guard, in a rock quarry, carrying heavy rocks, were illegal orders and punitive. Certainly no reasonable person can quarrel with such a striking violation of Article 13.

Greater difficulty is experienced, however, in lesser forms of restraint; specifically, restriction. Persons sentenced to restriction via either court-martial or nonjudicial proceedings under Article 15, UCMJ, often carry out such sentences in an environment closely similar to that of their fellow, full-duty servicemen with some increased degree of restraint regarding their personal movement, access to base facilities, and off-base liberty after working hours. Such limited conditions of restraint, however, are also subject to the strictures of Article 13. That Codal provision requires that:

no person, while being held for trial or the result of trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or con-

finement imposed upon him be any more rigorous than the circumstances require to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

The government contended, in *Bayhand, supra*, that the work details assigned to the accused in that case differed little from the required normal duties necessary in a military community. Significantly, the Court acknowledged that such duties and work details could be imposed properly upon all military personnel incident to normal duty requirements. It distinguished, however, the circumstances presented to Private First Class Bayhand. He was required to carry out those orders in the company of, and indistinguishable from, sentenced prisoners. *Bayhand, supra* at 93. Our view is likewise focused on the linkage of the individual serviceman awaiting possible disciplinary adjudication of alleged offenses with those who have been convicted under the law and sentenced to punitive restraint and activities. The salient inquiry is whether the person pending disciplinary action is made to undergo degrees of official restraint in a manner that, in effect, stigmatizes him as a prisoner. In *Carmel*, the appellant was mingled with and was restrained to the same degree as court-martialed and nonjudicial punishment restricted persons: visits to exchange, barber shop, bank permitted only in company of Master at Arms; appellant was confined in "Cage" in restricted barracks on several occasions; persons restricted by sentence of court-martial or nonjudicial punishment were commingled with, and issued same restriction order as given to persons in pretrial restriction. *Carmel, supra* at 747–748. This court has thus found such conditions to cumulatively represent oppressive conditions. *Carmel, supra; Self, supra.*

▮ We believe that the following analysis, in the future, by the trial judge, with necessary findings made part of the trial record, will provide sufficient reference points for appellate evaluation: *See also Bayhand, supra.*

1. What similarities, if any, in daily routine, work assignments, clothing attire, and other restraint and control conditions, exist between sentenced persons and those awaiting disciplinary disposition? ·

2. If such similarities exist, what relevance to customary and traditional military command and control measures can be established by the government for such measures?

3. If such similarities exist, are the requirements and procedures primarily related to command and control needs, or do they reflect a primary purpose of stigmatizing persons awaiting disciplinary disposition?

*Barracks Regulations*

We now turn to the conditions which were imposed upon appellant in this case, and which are contained in the trial record and apparently considered by the trial judge in his ruling.

The appellant was assigned to Barracks # 347 at the Naval Education and Training Center, Newport, Rhode Island following his voluntary surrender to naval authorities in Texas after an alleged unauthorized absence of approximately 22 months. He was assigned to Barracks # 347 for a period of approximately two months prior to this court-martial. The regulations and procedures governing the personnel assigned to this barracks were contained in the Director for Administration, Naval Education and Training Center Regulation 20/WPC:pcm dated 19 Dec 1979. (Defense Exhibit A). That regulation, in summary, generally provided for the following:

Division of personnel into categories of liberty and non-liberty personnel, with non-liberty personnel sub-categorized into those serving restriction sentences and those in pretrial restriction status; check-in and check-out procedures; bunk and linen assignment; schedules for use of television lounge and laundry room; daily and holiday routine; leave and liberty policies; and issuance of health and comfort supplies.

Specifically, the regulation provided for:

A. Navy Uniform and grooming regulations applicable to personnel assigned to Barracks 347:

All personnel required to be in complete uniform of the day during all work days, with duty section and restricted personnel required to be in complete uniform of the day at all times as excepted by the Duty Master at Arms. (MAA)

Requirement that all uniforms be clean, hemmed properly, and free of rips and tears.

All Petty officers required to wear appropriate rank insignia.

Haircuts and beards cut to present neat and clean appearance.

B. General barracks regulations, in addition to prohibiting possession of dangerous weapons, illegal drugs gambling, and alcoholic beverages in the barracks, provided that:

Personnel were not permitted to lounge on any bunks prior to taps unless authorized by Duty MAA. [this provision deleted two days after appellant's assignment to barracks] No radios, television sets, tape decks stereo units, or guitars were permitted in berthing spaces at any time. [They could be checked out from duty MAA for use outside berthing areas It is noted from trial record that Barracks # 347 was the only open squadbay barracks in use on board NETC, Newport.] All personnel in a disciplinary status (sentenced or pretrial) desiring to eat any meal at the dining facility on a work day required to fall in and march in formation to dining facility at times prescribed in daily routine.

Regulations pertaining to persons serving sentences of restriction required: Personnel to be inside Barracks # 347 between 1900–0600.

Eight musters each non-working day. Personel to keep face clean shaven. No wearing of civilian clothes permitted at any time.

Personnel to be in complete uniform of the day at all times between reveille and taps.

Surrender of chow pass and ID card to MAA.

Regulations pertaining to persons placed on "nonpunitive restriction" awaiting disciplinary disposition required:

Personnel to be inside Barracks # 347 between 1900–0600.

Five musters each working day.

Personnel to be in uniform of the day during working hours.

Surrender of chow pass and ID card to MAA. [Requirement to surrender ID card deleted two days after appellant's assignment to Barracks # 347].

This directive, in our opinion, represents a comprehensive, reasonable, and clearly appropriate command policy designed to maintain necessary degrees of military control over an enlisted population consisting of sentenced persons and persons pending possible disciplinary action. Anyone even minimally acquainted with the leadership and personnel problems inherent in such a multi-category population should recognize both the necessity and the justifications for such controls. Article 13, UCMJ does not require the abandonment of established and customary levels of military command and control over members of the armed forces.

These regulations, both in total and in part, represent, in our view reasonable and measured degrees of control and restraint on the categories of personnel assigned to Barracks 347. Nothing in the record of trial indicates, in any way, that the provisions of this command directive were violated or deviated from by officers and petty officers in authority. On the contrary, it appears that the military judge in this case and, apparently, in two earlier cases, had applied his own personal assessment to the conditions imposed in the directive, itself, and found the following requirements to be in his words, "illegal and improper." :

1. The requirement that the appellant march in formation to meals at the galley.

2. The prohibition against possessing radios, TV's tape decks, stereos, or guitars in the crew's berthing spaces.
3. The prohibition, existing during the first two days of appellant's assignment to Barracks 347, against lounging in one's bunk prior to taps.

■ We are not privy to the personal background and military experience of the trial judge. We are always prepared, in the proper circumstances, to accord to the trial judge a permissible range of discretion into which we will not intervene. In this instance, however, we are compelled to find this judge to be in error when he held the above requirements to be "illegal and improper;" which we assume, represents a punitive characterization.

It may be, as stipulated in this case, that no other enlisted personnel at Newport are subject to the regulations imposed upon the appellant and other personnel assigned to Barracks # 347. We are not prepared to substitute our judicial opinions for that of the commanding officer, regarding the other enlisted personnel at Newport, except to observe that a little close order drill to meals has never impacted adversely on any military unit of the United States that we are aware of, and that perhaps greater restrictions on the use of sound reproduction equipment by even those full-duty personnel assigned to dormitory-type barracks might improve the habitability levels of personnel required to live under the daily onslaught of contemporary sound equipment and the spectrum of personal tastes and volume levels apparent to any officer who has stood a few duty officer watches in the last decade. Further, we opine that the restrictions on lounging in bunks prior to taps might improve physical fitness levels as well as possibly providing greater assurance that personnel would be able to make timely appearance at musters and assigned work stations.

We find much of the subject regulation, with certain exceptions related to private vehicles and off-base liberty, to contain traditional, reasonable, and effective means of command control that were not unknown to all junior enlisted members of the naval service in former years, and, were proven and effective means of maintaining disciplined and orderly barracks environments for our sailors and Marines, and certainly provided clearer prestige levels for our non-commissioned officers and petty officers who earned and enjoyed the levels of personal privacy and freedom now improperly, we believe, considered the right of recruits several hours out of boot camp.

## TRIAL JUDGE'S DISCRETIONARY AUTHORITY

We recognize the justifiable and traditional reluctance of appellate courts to intervene in areas properly consigned to the trial judge's discretion. *United States v. Dettinger*, 7 M.J. 216, 224 (CMA 1979). However, the "exercise of discretion" must not be a concept according blanket immunity to the trial judge's decisions.

Certainly the trial judge's authority in certain matters within the trial arena rests upon the obvious recognition that the trial judge was present in the courtroom. He saw, heard, and was able to evaluate witnesses and evidence. As the benefits derived from such first-hand contact and evaluation become, however, less relevant, the analysis of his rulings must undergo more searching analysis. "Discretion" is not a license for arbitrary will or inconsiderate action. *Styria v. Morgan*, 186 U.S. 1, 9, 22 S.Ct. 731, 734, 46 L.Ed. 1027 (1901).

■ The exercise of discretion must rest upon some observable standards to avoid inconsistency within a system so necessarily responsive to judicial edicts as is the military justice system. Rulings made by the trial judge, therefore, must evolve from some authoritative standards and not unfettered personal opinions. *See, Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1930); *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *Gragg v. United States*, 10 M.J. 732 (N.C.M. R.1980); Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635 (1971).

When there is no observable, reasonable, and authoritative support for the trial judge's ruling, appellate courts cannot stand impotent before the concept of judicial discretion. Certainly a trial judge's view that requiring a pretrial restrainee to wear his or her service uniform during working hours is punitive and illegal and a violation of Article 13, UCMJ, requiring administrative credit, cannot persuasively be defended against appellate intervention. Conversely, a trial judge's ruling rejecting a defense contention that requiring a pretrial restrainee to break rocks eight hours a day, garbed in a black & white striped uniform with a letter "P" on his cover is punitive and violative of Article 13, UCMJ, and accepting a government contention that such treatment was solely educational therapy, also requires, at the least, equality of appellate intervention and correction.

We therefore, examine without reluctance, but with appropriate deliberation, the ruling made by the military judge in this case regarding appellant's contention of illegal pretrial restraint.

In reviewing the military judge's ruling of "illegal and improper" conditions, we search in the record for a perceived basis for the ruling. We have certainly not been provided with any guidance from the trial judge as to what "illegal or improper" definitions apply in this case. We assume, however, from the context of appellant's motion and argument at trial, the vigorous response by trial government counsel, and the wording of the judge's ruling referred to above, that certain of the barracks regulations imposed upon the appellant represented punitive impositions in the mind of the military judge.

If the trial judge, in arriving at such conclusions had stated an authoritative basis for viewing the requirement to march in formation to meals, the prohibition against the possession of audio and video equipment in berthing spaces, and the prohibition against lounging in one's bunk prior to taps as being punitive, it would have given this court a statutory, regulatory, or case law source for the ruling. There is no evidence on the record of unreasonable or improper similarities of treatment between sentenced restricted members and pretrial restricted members. On the contrary, Defense Exhibit A reflects a structured segmentation of daily routine, and muster requirements clearly distinguishable in application between sentenced and pretrial personnel in Barracks # 347.

We certainly can find no acceptable or rational basis for the military judge's ruling that requiring the appellant to comply with the three regulations cited above was improper and illegal, and required administrative credit.

We find, therefore, that the military judge abused his discretion in ruling that the conditions imposed upon appellant during the period of pretrial residency status in Barracks 347, were illegal and improper, and in ordering administrative credit of one-third day credit for each day spent in Barracks 347. We decline, for obvious reasons, at this stage of appellate review, to order a reversal of the order for administrative credit.

We trust that our somewhat expansive opinion in this case will serve as an advisement of what we believe to be appropriate reference points in analyzing conditions of pretrial restraint and the interrelated needs of command and control of military units and structures.

We have examined the record of trial, the assignment of error, and the Government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence, as approved on review below, are affirmed.

Chief Judge CEDARBURG and Judge SANDERS concur.