UNITED STATES, Appellee

v

STEVEN A. NELSON, Seaman Apprentice,
U. S. Navy, Appellant

18 USCMA 177, 39 CMR 177

No. 21,512

March 14, 1969

*Lieutenant Stephen W. Grafman,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant David E. Miller,* JAGC, USNR.

*Captain William S. Foss,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

FERGUSON, Judge:

Accused was convicted by a general court-martial, convened at Da Nang, Vietnam, upon his plea of guilty, of absence without leave, violation of a lawful general order, possession of marihuana, and breach of restriction, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 892, and 934, respectively. He was sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for six months, and reduction to pay grade E–1. Intermediate appellate authorities approved the findings and sentence. We granted review on the sole issue of:

> "Whether the circumstances of accused's pretrial confinement resulted in a denial of due process of law."

At the outset of the trial, and prior to the accused's entry of a plea, trial defense counsel moved for a dismissal of all of the charges and specifications on the ground that during the period of his pretrial confinement the accused was subjected to punishment in violation of Article 13 of the Code, supra, and "NavPers 15825, Revised January 1966, specifically, paragraphs 5c and d."

At the direction of his counsel, the accused, in an out-of-court hearing on the motion, testified that he had been ordered into pretrial confinement on May 9, 1968. For the first week he was put through a program of indoctrination, during which time he wore an armband denominating him as an indoctrinee. After completing this program, he was transferred to medium security for an additional week and then placed in a minimum security status, in which status he remained until the day of his trial on June 20, 1968.

During this latter period of time the accused wore green utilities, the same as sentenced[1] and adjudged[2] prisoners, observed the same hours, ate his meals with them, was governed by the same rules and regulations, and also slept in a hut with both sentenced and adjudged prisoners. Apparently, the only means of distinguishing the various categories of prisoners was by means of the lettering on the armbands worn ("D" for detainee; "A"

---

[1] A "sentenced" prisoner is a person who has been convicted by court-martial and whose sentence has been approved and ordered executed as required by law.

[2] An "adjudged" prisoner is a person who has been tried by court-martial and sentenced to confinement, but whose sentence has not as yet been approved or ordered executed.

for adjudged; and "S" for sentenced), with the armbands also distinguishable by color (red for maximum security; black for medium security; and green for minimum security). Also during this period, the accused was sent on various work parties away from the brig compound and used indiscriminately and interchangeably with sentenced and adjudged prisoners.

Trial defense counsel argued from this testimony that "the accused has already been punished for his offenses" and cited this Court's decision in United States v Bayhand, 6 USCMA 762, 21 CMR 84.

The law officer, after listening to discussion of the issue by both trial and defense counsel, overruled the motion in the following language:

"In order for me to evaluate the work assignments it is necessary for me to consider the conditions available in I Corps. I cannot close my eyes to the fact that we are in a war zone. And in acting upon your motion, Mr. Defense Counsel, I cannot close my eyes to these conditions. They are all around me. The accused is not required to do any more nor has any more been expected of him than is expected from other sailors and marines stationed in this area. Officers and men stationed in I Corps are required to work long hours, perform arduous and tedious labor. I therefore find that the accused has not been punished while in pretrial confinement. Accordingly, defense counsel, the motion is overruled."

Before this Court, appellate defense counsel asserted that the law officer applied an incorrect test in overruling defense counsel's motion; that Article 13 of the Code and Navy's own regulations expressly prohibit the situation that served as the basis for the motion; and that the circumstances of accused's pretrial confinement comes within the guidelines set down in United States v Bayhand, supra, for determining when an unsentenced prisoner has been subjected to punishment other than arrest or confinement.

Government appellate counsel contended that the pertinent codal provision and the Navy regulation proscribe only the imposition of *punitive* duty hours, labor, and wearing of a distinctive uniform. They adopted the law officer's view that the brig area was in a war zone, where everyone had to work hard and perform similar labor, and argued that the fact of war made the not "all-inclusive" test in *Bayhand* inapplicable in the present situation.

We do not believe that the Government's view is sustainable. Article 13 of the Code, supra, states:

"Subject to section 857 of this title (article 57) [Effective date of sentences], no person, while being held for trial or the result of trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline."

In enlarging on that Article of the Code, the Manual for Courts-Martial, United States, 1951, paragraph 125, in pertinent part states that:

"No member of the armed forces of the United States shall . . . while being held awaiting trial or the results of trial be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him . . . [Nor shall] an accused . . . be required to observe either duty hours or training schedules devised as punitive measures, nor required to perform punitive labor, nor required to wear other than the uniform prescribed for unsentenced prisoners, except that during such periods he may be subjected to minor punishment for infractions of discipline (see Art. 13)."

Paragraph 18b(3) also provides that:

". . . Prisoners being held for

trial or whose sentences have not been approved and ordered executed will be accorded the facilities, accommodations, treatment, and training prescribed in pertinent regulations."

Within the Naval service, this implementation has been accomplished by the Department of the Navy's Corrections Manual, NAVPERS 15825, Revised, chapter 406.5, page 54:

"It is necessary to recognize the difference in status of prisoners whose sentences to confinement have not been ordered executed from other prisoners. (See 107.1 and 107.2). However, since the correctional program is rehabilitative and corrective in nature rather than punitive, prisoners whose sentences to confinement have not been ordered executed may be assigned to participate in program activities with sentenced prisoners under the following circumstances:

a. To classroom instructions and other training activities, not designed as punitive.

b. To various police, fatigue, and work details which may be assigned to duty personnel in the maintenance and operation of the command, and which are not devised as punitive.

c. To unrestricted participation in the full rehabilitative work program when the prisoner has volunteered or agreed after having had explained to him his rights and privileges in the matter.

d. Detained and adjudged prisoners must not be required to observe duty hours or training schedules devised as punitive measures. Except as provided for above they must work separately from sentenced prisoners."

On the scene (Vietnam) implementation of the cited provision of the Manual is set forth in the III Marine Amphibious Force (MAF) Order No. 1640.1D, dated July 25, 1967. Therein, the Commanding General of the III MAF designated the III MAF Brig as an authorized naval place of confinement and directed, in paragraph 6, page 3, that:

"A hard labor program will be instituted and maintained at III MAF Brig. Prisoners whose sentences have not been ordered executed (detained and adjudged prisoners) may not be assigned the same work details, or type of detail, as sentenced prisoners."

In United States v Bayhand, supra, we had occasion to consider a similar issue. Bayhand was in confinement in the Post Stockade awaiting trial on charges which were subsequently dismissed. While serving on a work detail under guard, in company with sentenced prisoners, he twice refused orders to perform certain work. He was tried and convicted for disobedience of these orders. The evidence reflected that both Bayhand and the sentenced prisoners wore fatigue uniforms with a white band around the arm. Both were required to work with picks and shovels, carrying rocks and loading wheelbarrows. In essence, they performed equivalent duties. A confinement officer testified that under the procedure followed in the guardhouse there was no difference in the type of duty performed by sentenced and unsentenced prisoners.

In order to ascertain the legality or illegality of the orders given to Bayhand, we made an exhaustive analysis of the development of Article 13 of the Code. (*Ibid.*, pages 765–770.) From this analysis we determined that the crucial issue to be decided was whether under the circumstances depicted accused was being punished. In order to make that determination, we posed the following questions which, while admittedly not all-inclusive, were factors which should be considered: "(1) Was the accused compelled to work with sentenced prisoners? (2) Was he required to observe the same work schedules and duty hours? (3) Was the type of work assigned to him normally the same as that performed by persons serving sentences at hard labor? (4) Was he

dressed so as to be distinguishable from those being punished? (5) Was it the policy of the stockade officers to have all prisoners governed by one set of instructions? (6) Was there any difference in the treatment accorded him from that given to sentenced prisoners?" (*Ibid.*, at page 770.)

In *Bayhand*, supra, we found not a single circumstance that that accused was accorded any consideration not shown sentenced prisoners. Under such circumstances, we concluded that the orders to work were illegal as a matter of law. As we there noted, "Congress has decreed that, until convicted, one charged with a crime shall not be subjected to punishment, and we must enforce that edict." (*Ibid.*, at page 773.)

In the case at bar we make a similar finding. This accused was compelled to work with sentenced prisoners. He was required to observe the same work schedules and duty hours. The work assigned to him was the same as that performed by persons serving sentences at hard labor. It was the policy of the stockade to have all prisoners governed by one set of instructions. There was no difference in the treatment accorded him from that given to sentenced prisoners. Only in the area of dress can a contention be made that sentenced and unsentenced prisoners were not treated alike. They wore different colored armbands with different letters, each denoting a specific classification. We do not believe that this method of categorization is sufficient to dictate a contrary result.

Nor do we believe that the situation in Vietnam should be controlling, especially since the Commanding General of the III Marine Amphibious Force in Vietnam apparently did not think it should make any difference. As we noted in *Bayhand*, supra, at pages 771–773:

"... To permit military authorities to commingle sentenced and unsentenced prisoners, and deal with them equally, would indeed require an unsentenced prisoner to serve a sentence before conviction.

. . . . . .

"Surely, it is not asking too much to require those in command of stockades to exercise sufficient ingenuity in allocating tasks to those who have not been convicted so as to comply with both the letter and spirit of the law."

In *Bayhand*, we reversed and dismissed because the orders which he allegedly disobeyed were given to effectuate the illegal "punishment." In this case, however, a different situation pertains, for the offenses of which this accused was convicted occurred prior to his confinement and the additional punishment had no such direct bearing, except as it might have influenced or motivated him to enter a plea of guilty. But this is not contended here.

Rather, we are asked by appellate defense counsel to declare that the accused was subjected to "punishment" prior to trial without due process of law and, as a consequence, to take remedial action by dismissing the charges and specifications.

We do indeed find that this accused was subjected to "punishment" in violation of Article 13 of the Code, supra, without due process of law. The remedy requested by counsel is not deemed appropriate under these circumstances, but modification of the sentence is in order.

Ordinarily the board of review is the appropriate tribunal for reassessment of sentences found faulty at this level. However, this accused has already served his sentence to confinement at hard labor, and the only unexecuted portion of the sentence is the punitive discharge. Under these circumstances, were we simply to return the case to the board of review for reassessment of the sentence, we would thereby imply that the bad-conduct discharge may be affirmed. Such a course would deprive the accused of all meaningful relief, and would rightly suggest that this Court is prepared to wink at such grossly illegal treatment of men in pretrial con-

finement. The disastrous effects of such a situation upon the system of military justice itself are so manifest as to require us to eliminate that possibility.

Accordingly, the decision of the board of review as to sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A board of review may reassess and approve a sentence which does not include a bad-conduct discharge.

Chief Judge QUINN concurs.

DARDEN, Judge (concurring):

In concurring, I want to record my consciousness that strict compliance with the law is more difficult in a combat zone because of the additional facilities and guards required. I am also aware that even those unsentenced prisoners who are living and working with the sentenced ones in Vietnam are probably more comfortable and safe than their fellow members of the armed forces who have not been convicted of or charged with an offense. Despite my understanding of these conditions, I recognize that the Commanding General of the III Marine Amphibious Force was in a better position to judge the impracticality of maintaining separation and that he had ordered that unsentenced and adjudged prisoners not be assigned the same work details or type of detail as sentenced prisoners.