UNITED STATES, Appellee,

v.

Senior Airman Steven M. BRUCE, U.S. Air Force, Appellant.

No. 41,374.
ACM 22899.

U.S. Court of Military Appeals.

Dec. 6, 1982.

For Appellant: *Captain G. Michael Lennon,* USAFR (argued); *Colonel George R. Stevens, Major Wade B. Morrison* (on brief).

For Appellee: *Major George D. Cato* (argued); *Colonel James P. Porter* (on brief).

*Opinion of the Court*

FLETCHER, Judge:

In April 1980, appellant was tried by general court-martial at Peterson Air Force Base, Colorado. Contrary to his pleas, he was found guilty of violating a lawful general regulation by wrongfully possessing quaalude, in violation of Article 92(1), Uniform Code of Military Justice, 10 U.S.C. § 892(1). In addition, he was found guilty of wrongful sale of marihuana and the wrongful communication of a threat, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced him to a bad-conduct discharge, confinement at hard labor for 5 months, and reduction to the grade of airman.

On August 28, 1980, the convening authority disapproved the findings of guilty of wrongful communication of a threat. He approved the sentence, but remitted approximately 1 month's confinement at hard labor. The Court of Military Review affirmed this action without opinion.

This Court granted review on the following two issues:

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE AN OUT OF COURT STATEMENT AGAINST PENAL INTERESTS THAT WAS NOT SUFFICIENTLY RELIABLE AND TRUSTWORTHY TO BE ADMISSIBLE.

WHETHER THE APPELLANT'S PRETRIAL CONFINEMENT FROM 14 FEB-

RUARY TO 29 APRIL 1980 (75 DAYS) WAS ILLEGAL, SINCE HE WAS MADE TO BE HOUSED WITH SENTENCED PRISONERS AND WAS MADE TO PERFORM THE SAME WORK UNDER THE SAME CONDITIONS AS SENTENCED PRISONERS.

We have elected to address these issues in reverse order.

## I

At appellant's court-martial, his defense counsel made a motion to dismiss or for other appropriate relief on the basis of his illegal punishment prior to trial. Article 13, UCMJ, 10 U.S.C. § 813. Witnesses were called and presented testimony concerning appellant's pretrial incarceration at an Army detention facility. The military judge denied this motion, but indicated that he would consider every day of appellant's pretrial confinement in arriving at an appropriate sentence. The record indicates that prior to sentencing, he determined the actual duration of this period of pretrial confinement. The maximum authorized punishment for appellant's offenses was a dishonorable discharge, 9 years' confinement at hard labor, total forfeitures, and reduction to airman basic. The military judge, as indicated earlier, sentenced appellant to a bad-conduct discharge, confinement at hard labor for 5 months, and reduction to airman. The staff judge advocate advised the convening authority about the condition of appellant's pretrial confinement and recommended approval of the sentence. Before the Court of Military Review, appellant again argued that his pretrial confinement was illegal. He asserted that his bad-conduct discharge should be set aside because he had already served his approved sentence to confinement.

■ The Government asserts that the pretrial confinement of appellant was not illegal because appellant was not compelled to accept the conditions of a sentenced prisoner. It notes that appellant agreed to accept these conditions as a means to obtain from prison authorities greater access to recreational facilities only available to sentenced prisoners. We hold this argument is without merit.

Article 13 states in part that "no person, while being held for trial ... may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence." We can find in this statute no express provision for waiver by a military accused, nor are we inclined to find such a waiver provision by implication. Long ago, we stated in *United States v. Bayhand,* 6 U.S.C.M.A. 762, 773, 21 C.M.R. 84, 95 (1956):

> Even though it may take some additional man-hours of guarding to segregate classes of prisoners, Congress has decreed that, until convicted, one charged with a crime shall not be subjected to punishment, and we must enforce that edict.

The Government has not shown good cause for us to depart from this position today. In addition, the Government has not offered a single regulatory provision from the Department of Defense, the Secretary of the Army, or the Secretary of the Air Force, which would authorize military prison authorities to unilaterally invent such a waiver procedure. *See* 10 U.S.C. § 951. Finally, to suggest that a valid voluntary waiver could occur under the circumstances described in the present case is to defy reason.

■ The Government also asserts that conditions of confinement suffered by appellant prior to trial were not so onerous as to constitute a violation of Article 13. *United States v. Nelson,* 18 U.S.C.M.A. 177, 39 C.M.R. 177 (1969); *United States v. Bayhand, supra.* Apparently adopting the Government's waiver theory, the Court of Military Review made no findings of fact pertinent to the resolution of this legal question. We hold that this case should be returned to the Court of Military Review to make finding of facts with respect to this question and take appropriate action consistent with its findings. *See United States v. Davidson,* 14 M.J. 81, 83 (C.M.A.1982).

## II

Appellant was charged in November 1979 with possession of quaalude. The testimony at trial concerning this offense was adduced from a former member of the Air Force, Michael D. Heffron. He testified that in November 1979 he worked with appellant as a security specialist at the NORAD Cheyenne Mountain Complex. During this time, this witness admitted that he distributed drugs to servicemen on behalf of his civilian supplier, Howard Locker.

In particular, Heffron testified that appellant approached him just prior to their going on security duty outside Building 60–11 at the Cheyenne Mountain Complex. He stated that appellant asked him if he could get some quaaludes. Heffron stated that he could. Heffron further testified that appellant stated he wanted four quaaludes. Heffron replied that the quaaludes cost five dollars per pill. At this point, Heffron testified that he went to Howard Locker and asked him to hold back four quaaludes for him. A few days later, Heffron testified that Locker delivered the requested drugs to him. He further testified that Howard Locker told him "that it was good stuff and you only needed half a pill to get off on it." Defense counsel objected to the introduction of this hearsay testimony to establish the identity of these pills. Trial counsel countered that in view of the decision of this Court in *United States v. Johnson,* 3 M.J. 143 (C.M.A.1977), the out-of-court statement made by Locker was a declaration against his penal interest and therefore was admissible hearsay. The trial judge overruled the objection and admitted the hearsay testimony of Michael Heffron.

At this point, Heffron testified that the pills were "white, fairly large" about the size of a dime. He further stated that he believed that the pills "had one or two lines down the center of them and they had some writing on them." On cross-examination, he later admitted that he had never seen quaaludes before; that he had not tasted the pills or tested them in any way; that he received the pills in a closed bag; that he had not opened the bag; and finally, that he had no personal knowledge of what was in the bag.

Heffron also testified that he brought what he believed to be quaalude pills to appellant at a parking lot adjacent to Building 60–11. There the exchange took place. He finally testified that a few days later appellant commented to him about the pills he delivered. Heffron testified, "He said, 'Yes,' that it was good. He said that he had smoked them and that they were really good." The Government introduced no more evidence on this possession-of-quaalude charge. There were no pills introduced or laboratory analysis thereof. The defense attempted to undermine the credibility of this witness through attacks on his credibility and character.

■■ It is true that this Court in *United States v. Johnson, supra* at 146 n. 3, noted that the statement-against-penal-interest exception to the hearsay rule as embraced in Fed.R.Evid. 804(b)(3) was "fully applicable" at courts-martial tried after July 1, 1975. *Cf. United States v. McConnico,* 7 M.J. 302, 307–09 (C.M.A.1979). This exception to the hearsay rule is also expressly recognized in the new military rules of evidence which took effect on September 1, 1980. *See* Mil.R.Evid. 804(b)(3). Under both rules, the Government is required to show that the out-of-court declarant is unavailable. *See* Fed.R.Evid. 804(a) and Mil.R.Evid. 804(a). In the present case, no such showing was made or proffered by the Government. Since this court-martial was tried before September 1, 1980, appellant's failure to particularize his objection to this testimony on this ground is not waiver. Para. 139a, Manual for Courts-Martial, United States, 1969 (Revised edition); *cf.* Mil.R.Evid. 103(a). Accordingly, the military judge erred in admitting that portion of Heffron's testimony which concerned the out-of-court declaration of Howard Locker.

■ The next question we must address is whether appellant was prejudiced by the introduction of this inadmissible hearsay testimony at his court-martial. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See United States v. Watson,* 11 M.J. 483, 486 (C.M.

A.1981); *United States v. McConnico, supra.* This testimony was used by the Government to establish the chemical nature or identity of the substances possessed by appellant. Examination of the record reveals that other evidence was offered which tended to establish the identity of the drug. Heffron's admissible testimony revealed that appellant intended to buy quaaludes and that he later indicated he was satisfied with his purchase. Yet, there was no evidence in the record that appellant was an admitted user of quaaludes or his statement of satisfaction was based on his prior experiences with this drug. *Cf. United States v. White,* 9 M.J. 168, 170 (C.M.A. 1980); *United States v. Weinstein,* 19 U.S. C.M.A. 29, 41 C.M.R. 29 (1969). As indicated earlier, the admissible testimony of Heffron as to his personal knowledge of the identity of the drug was also deficient. Accordingly, we must conclude that the military judge could have been measurably affected by admission of this inadmissible hearsay testimony, *United States v. Watson, supra; United States v. Pavoni,* 5 U.S. C.M.A. 591, 18 C.M.R. 215 (1955). This finding of guilty to a violation of a lawful general regulation cannot stand.

■ A question remains whether the entire finding of guilty is affected by this error. Article 59(b). Appellant was charged with violating a lawful general regulation. Article 92(1), UCMJ, 10 U.S.C. 892(1). It has long been established that the Government need not allege or prove that an accused had knowledge of the particular regulation violated to secure a valid conviction under this codal article. *United States v. Tinker,* 10 U.S.C.M.A. 292, 293, 27 C.M.R. 366, 367 (1959); *United States v. Snyder,* 1 U.S.C.M.A. 423, 4 C.M.R. 15 (1952). However, the Government must allege the lawful general regulation which the accused purportedly violated. *United States v. Bunch,* 3 U.S.C.M.A. 186, 11 C.M.R. 186 (1953). Moreover, the Government must allege and prove the facts constituting the regulatory infraction. *United States v. Crooks,* 12 U.S.C.M.A. 677, 31 C.M.R. 263 (1962); *United States v. Bunch, supra.* Finally, depending on the lawful

general regulation alleged, the Government must also prove any general or specific intent required by this regulation. *United States v. Whyte,* 23 U.S.C.M.A. 551, 50 C.M.R. 722 (1975); *United States v. Tucker,* 17 U.S.C.M.A. 551, 38 C.M.R. 349 (1968); see para. 4–27(c), *Military Judges' Guide,* Department of the Army Pamphlet 27–9 (1969).

■ In the present case, appellant was charged with violating paragraph 4–4, Air Force Regulation 30–2 (Nov. 8, 1976). Both parties to this appeal agree that this general regulation prohibits the possession of quaalude. Possession in this type of regulatory context has been construed to mean the knowing and intentional possession of drugs. *See United States v. Wilson,* 7 M.J. 290, 292–93 (C.M.A.1979). Accordingly, the Government in this case was required to prove that appellant knowingly and intentionally possessed quaalude.

To meet this burden, the Government introduced the testimony of Heffron. He testified that appellant approached him and asked him for some quaaludes. He further testified that they agreed to a purchase price and at a later date he transferred a bag of what they both believed was quaaludes to appellant. The particular question confronting this Court is whether we may affirm so much of this finding of guilty as finds attempted possession of quaalude in violation of Article 80, UCMJ, 10 U.S.C. § 880; *Clinton Cotton Mills v. United States,* 164 F.2d 173, 177 (4th Cir.1947).

■ No case has been brought to our attention in which we have affirmed a finding of attempt where the evidence at this level was found insufficient to support a finding of the consummated offense. *Cf. United States v. Patterson,* 14 U.S.C.M.A. 441, 34 C.M.R. 221 (1964); *United States v. Stanaway,* 12 U.S.C.M.A. 552, 31 C.M.R. 138 (1961); *United States v. Woolbright,* 12 U.S.C.M.A. 450, 31 C.M.R. 36 (1961). We also note that this power, if it does exist under Article 59(b), is discretionary. In addition, we believe that such a modification of findings is more particularly appro-

priate for a court with factfinding power. *See United States v. Manley,* 632 F.2d 978 (2d Cir.1980); *United States v. Marin,* 513 F.2d 974, 976 (2d Cir.1975); *Simpson v. United States,* 195 F.2d 721, 723 (9th Cir. 1952); *United States v. Heng Awkak Roman,* 356 F.Supp. 434 (D.C.N.Y.1973), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974). Without deciding this question and in view of the fact that we are already returning this record to the Court of Military Review, we hold that that court should also decide whether a finding of attempt may be affirmed. *See United States v. Dominguez,* 7 U.S.C.M.A. 485, 22 C.M.R. 275 (1957). *See generally Commonwealth v. Gosselin,* 365 Mass. 116, 309 N.E.2d 884 (1974).

The decision of the United States Air Force Court of Military Review affirming the finding of guilty to the sale of marihuana is affirmed. The portion of that decision affirming the finding of guilty to a violation of a general regulation and the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that Court for action in accordance with this opinion.

Chief Judge EVERETT and Judge COOK concur.