**UNITED STATES**

v.

**Senior Airman Steven M. BRUCE, FR 166–54–5692, United States Air Force.**

**ACM 22899 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 April 1980.

Decided 21 March 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain G. Michael Lennon, USAFR.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Brenda J. Hollis.

Before KASTL, CANELLOS and RAICHLE, Appellate Military Judges.

DECISION UPON FURTHER REVIEW

KASTL, Senior Judge:

This case is before us for action consonant with the Court of Military Appeals decision in *United States v. Bruce*, 14 M.J. 254 (C.M.A.1982), and the follow-on mandate dated 7 September 1983. We affirm the accused's conviction for *attempted* possession of quaalude, in violation of Article 80, U.C.M.J., 10 U.S.C. § 880, and we reas-

sess the sentence in light of impermissible conditions of pretrial confinement.*

# I

The first issue addressed by the Court of Military Appeals was:

WHETHER THE APPELLANT'S PRE-TRIAL CONFINEMENT FROM 14 FEBRUARY TO 29 APRIL 1980 (75 DAYS) WAS ILLEGAL, SINCE HE WAS MADE TO BE HOUSED WITH SENTENCED PRISONERS AND WAS MADE TO PERFORM THE SAME WORK UNDER THE SAME CONDITIONS AS SENTENCED PRISONERS.

The Court of Military Appeals quickly rejected the government's waiver theory—an assertion that the accused had freely agreed to accept the status of a sentenced prisoner to obtain better recreational facilities. Such argument, the Court held, was "without merit." *United States v. Bruce, supra,* at 256.

The Government further asserted that conditions of confinement were not so onerous here as to constitute a violation of Article 13 of the Code, 10 U.S.C. § 813; that article prohibits punishment other than arrest or confinement sufficient to insure the accused's presence for trial. In light of this contention, the Court of Military Appeals returned the case to this Court for findings of fact with respect to the possibility that: (a) present conditions were less-than-onerous; and (b) therefore they fell short of violating Article 13.

■ Our fact-finding power leads us inexorably to the conclusion that a violation of Article 13 occurred in this case.

We find the following facts:

1. The accused was assigned to Peterson Air Force Base, Colorado; he allegedly violated Articles 92, 132, and 134, U.C.M.J., 10 U.S.C. §§ 892, 932, 934.

2. He was placed in pretrial confinement from 17 February to 29 April 1980—a total of 75 days—at the Army's Fort Carson, Colorado, facility.

3. This facility is modern, with pool tables, games, first-run movies, and television sets. However, there is no true prisoner training program. No separate facilities exist to separate sentenced and adjudged prisoners from those in pretrial confinement.

4. Because of limited facilities, pretrial inmates are presented with an option to be housed with and work with sentenced prisoners. Those not agreeing abandon television, library and recreation facilities, and other common privileges.

5. The accused signed the waiver, as do approximately 90 per cent of the pretrial confinees.

6. The accused was commingled with those already adjudged and sentenced.

7. The accused's work details included sweeping, mopping, and buffing the facility and "police calls," which consisted of picking up paper on post for two-to-three hour periods. During "police calls," the accused wore leg chains similar to handcuffs, with a stretch of chain between them. The accused claimed at trial that he experienced physical pain from the leg chains, including broken and bleeding skin. There is no evidence that this occurred intentionally, if at all. Similarly, the accused testified that he was handcuffed numerous times when outside the facility; the accused claimed the handcuffs caused impressions on his hands but did not break the skin.

8. The accused was treated no differently than other adjudged and convicted prisoners concerning work assignments.

---

* The accused was found guilty by a general court-martial of violating a lawful regulation by wrongfully possessing quaalude (Article 92, U.C.M.J., 10 U.S.C. § 892) and wrongful sale of marijuana and wrongful communication of a threat (Article 134, U.C.M.J., 10 U.S.C. § 934). The military judge sentenced the accused to a bad conduct discharge, confinement at hard labor for five months, and reduction to the grade of airman. The convening authority disapproved the findings of guilty of wrongful communication of a threat. He approved the sentence but remitted approximately one month's confinement at hard labor. This Court, in its original action, affirmed without opinion.

His duties, dress, schedule, and duty hours were precisely the same as theirs.

Commendably, the government brief concedes—absent a valid waiver—that the circumstances of pretrial confinement violated Article 13. We agree and so find. The Army's Fort Carson facility appears to be well-run, with only light work details. However, the language of the leading Article 13 case of *United States v. Bayhand*, 6 U.S.C.M.A. 762, 21 C.M.R. 84, 92–93 (1956) forecloses the subject:

> We recognize, of course, that the term "hard labor" had its origin in historic penology, and that the labor required of present-day prisoners is often no more strenuous than the cutting of grass or leaf raking. Nevertheless, when the work is performed by sentenced prisoners under armed guard, we must conclude that they are being punished in compliance with the sentence imposed. Therefore, *if an unsentenced prisoner works under identical conditions, it is fair to assume he, too, is being punished.* (emphasis added).

Moreover, the *Bayhand* court found too many similarities in treatment of the different classes of inmates to discern a meaningful difference:

> All stockade personnel wore the same garb; the accused was required to mingle on the job with sentenced prisoners; all prisoners were accorded identical treatment; and the stockade policy was to govern all by one set of working standards. Surely under those conditions, all prisoners became mere numbers without distinction or difference. *Ibid.*

Our analysis does not stop at this generalized level. To the contrary, one can be far more specific. In this vein, *Bayhand* suggests a series of questions which help determine whether a pretrial confinee is being impermissibly punished. These include: (a) whether he was compelled to work with sentenced prisoners; (b) whether he was required to observe the same work schedules and duty hours; (c) whether the work assigned to him was the same as that performed by sentenced prisoners; (d) whether his dress was distinguishable; (e) whether all prisoners were governed by one set of instructions; and (f) whether there was any difference in the treatment accorded him from that given to sentenced prisoners. *United States v. Bayhand, supra,* at 92. Applying these standards to the instant case, it is at once clear that a violation occurred. *United States v. Bayhand, supra; United States v. Nelson,* 18 U.S.C.M.A. 177, 39 C.M.R. 177, 180–181 (1969); *United States v. Whittier,* 14 M.J. 606, 607 (A.F.C.M.R.1982); *United States v. Franklin,* 41 C.M.R. 431, 437–439 (A.C. M.R.1969).

■ Left for resolution is the matter of an appropriate remedy for such illegal conditions of confinement violative of Article 13. As the law stands today, we discern at least three distinct situations meriting relief. A chart might make these classes easier to understand;

| SITUATION | REMEDY | FURTHER REMEDY IF CONFINEMENT COMPLETED | AUTHORITY |
|---|---|---|---|
| 1. Lawful pretrial confinement | Administrative credit | None | *United States v. Allen,* 17 M.J. 126, 128 (C.M.A. 1984) |
| 2. Unlawful confinement e.g., magistrate not acting independent of convenor | Administrative credit—perhaps at a rate above one-for-one. *See United States v. Suzuki,* 14 M.J. 491, 493 | Administrative credit for its ancillary benefits, such as "good time" | *United States v. Lynch,* 13 M.J. 394, 397 (C.M.A. 1982); *United States v. Pettersen,* 14 |

| | | | |
|---|---|---|---|
| | (C.M.A. 1983); *United States v. Shea,* 17 M.J. 966 (A.F.C.M.R. 1984) | | M.J. 608 (A.F.C.M.R. 1982) |
| 3. Illegal conditions violating Article 13 U.C.M.J. | Administrative credit-perhaps at a rate above one-for-one *United States v. Shea, supra* | Sentence reassessment | *United States v. Nelson,* 18 U.S.C.M.A. 177, 39 C.M.R. 177 181 (1969). |

NOTE: When some or all of the pretrial confinement is illegal due to a technical failing in pretrial processing, any credit applicable under *Allen* is subsumed into the credit for illegal pretrial confinement. *United States v. Shea, supra.*

■ Here we find the remedy to be sentence reassessment. *United States v. Nelson, supra,* at 181. The accused's reliance on the *Bayhand* remedy of dismissal of charges is misplaced, in our judgment, since the unique facts of *Bayhand* are, in all fairness, at once distinguishable. There, the accused was in pretrial confinement concerning earlier charges; he was tried for willful disobedience of a superior officer and a noncommissioned officer, offenses occurring while serving on a pretrial confinement work detail. Under the circumstances, the Court of Military Appeals found the orders to work illegal as a matter of law. The Court reversed and dismissed *precisely because the orders came about during the illegal confinement and were given to effectuate it.* See *United States v. Nelson, supra,* at 181. Such is decidedly not the case here, where the offenses are independent of pretrial confinement. Accordingly, we find sentence reassessment the proper remedy and will so order in our final paragraph. *See generally United States v. Suzuki, supra,* at 493; *United States v. Nelson, supra,* at 181.

II·

The second matter before us is:
WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE AN OUT OF COURT STATEMENT AGAINST PENAL INTERESTS THAT WAS NOT SUFFICIENTLY RELIABLE AND TRUSTWORTHY TO BE ADMISSIBLE.

■ The Court of Military Appeals held that the accused was prejudiced by introduction of inadmissible hearsay testimony as to the Specification of Charge I, wrongful possession of quaalude. At trial, the prosecution's main witness was a former member of the Air Force, Michael Heffron. Heffron testified that he procured four quaaludes for the accused from one Howard Locker. Heffron's admissible testimony revealed that the .accused intended to buy quaaludes and that he later indicated satisfaction with his purchase. However, the military judge also admitted inadmissible hearsay that Locker had identified the pills as quaaludes. Given such potentially devastating evidence, the Court of Military Appeals held that the findings of guilty to this offense could not stand.

Left for resolution is the question of whether a finding of *attempted* sale of quaaludes can be affirmed. The case has been returned to this Court for such determination.

We unhesitatingly affirm the offense of attempted possession of quaaludes. Factu-

ally, the accused approached Heffron and asked for quaaludes; the parties agreed to a purchase price of $5.00 per pill; Heffron later gave the accused what both parties believed to be quaaludes; and the accused told Heffron that he had smoked the quaaludes and they were "really good." Heffron conceded on cross-examination that he himself had never used quaaludes, and that he gave the substance to the accused in a closed bag. Upon this factual matrix, the evidence of record is sufficient to support a finding of guilty of attempted possession of quaaludes. We so find, after independently assessing the credibility of Mr. Heffron. *See United States v. Newak*, 15 M.J. 541, 544 (A.F.C.M.R.1982); *United States v. Manley*, 632 F.2d 978, 988–989 (2d Cir. 1980); *United States v. Marin*, 513 F.2d 974, 976 (2d Cir.1975). As for the Specification of Charge I, we affirm so much of this finding of guilty as finds that the accused attempted possession of quaalude, in violation of Article 80, U.C.M.J. *See generally Clinton Cotton Mills v. United States*, 164 F.2d 173, 177 (4th Cir.1947).

### III

We now come to reassessment, in light of the finding of a violation of Article 80, U.C.M.J., discussed in Part II and the impermissible conditions of pretrial confinement in Part I. Reassessing, we find appropriate only so much of the sentence as extends to a bad conduct discharge.

The findings of guilty and sentence, both as modified, are

AFFIRMED.

Judges CANELLOS and RAICHLE concur.