UNITED STATES, Appellee,

v.

**Private First Class Lavern S. AUSTIN, Jr., 366–78–9654, United States Army, Appellant.**

**ACMR 8700317.**

U.S. Army Court of Military Review.

18 Nov. 1987.

For Appellant: Major Eric T. Franzen, JAGC, Captain Keith W. Sickendick, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Carlton L. Jackson, JAGC (on brief).

Before ADAMKEWICZ, LYMBURNER, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

LYMBURNER, Judge:

Appellant was tried by a military judge sitting as a general court-martial. In a manner consistent with his pleas, he was convicted of aggravated assault with a loaded weapon and unlawfully carrying a concealed weapon, in violation of Articles 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928 and 934 (Supp. I 1983), respectively. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for 42 months, total forfeitures, and reduction to Private E–1.[1]

Appellant contends that "[t]he military judge abused his discretion by finding that appellant was not improperly commingled with sentenced prisoners and punished in violation of Article 13 while in a pretrial confinement status."[2] Neither the facts in

1. Following announcement of the sentence, the military judge properly directed that appellant's *86* days in pretrial confinement would be credited day-for-day against the confinement portion of the sentence. *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). The staff judge advocate subsequently advised the convening authority that appellant had been in pretrial confinement, as required by the Manual for Courts–Martial, 1984, Rule for Courts–Martial [hereinafter M.C.M., 1984 and R.C.M., respectively] 1106(d)(3)(C), but he misstated its duration as *78* days. The court is satisfied that the convening authority was not misled to appellant's prejudice as a result of the misstatement, Article 59(a), UCMJ, 10 U.S.C. § 859(a). The appellant will receive the full *86* day administrative credit on the sentence.

2. Article 13, UCMJ, 10 U.S.C. § 813 states: "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline." In implementation of Article 13, UCMJ, R.C.M. 304(f) provides, *inter alia,* that: "Prisoners being held for trial shall not be required to undergo punitive duty hours or training, perform punitive labor, or wear special uniforms prescribed only for post-trial prisoners.... Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned." The remedy for a violation of this rule is meaningful sentence relief. M.C.M., 1984, Analysis of R.C.M. 304(f), App. 21, A21–14. The Secretary of the Army has directed that a pretrial or detained prisoner will be segregated

this case nor the guidelines in *United States v. Palmiter*, 20 M.J. 90 (C.M.A. 1985), support the contention.

At trial, following announcement of the sentence, the defense counsel requested two-for-one credit on sentence for appellant's 86 days of pretrial confinement because appellant allegedly had been improperly commingled with sentenced prisoners on work details. Appellant then testified that during his pretrial confinement at the Installation Detention Facility, Fort Meade, Maryland, he "performed KP [kitchen police duties] ... administrative cleanup ... cell block cleanup, and shoveled some snow" and that these duties were the only labor he was required to perform during his pretrial confinement. Appellant further testified that he and the only other pretrial confinee were required to perform these duties alongside sentenced prisoners. During his in-processing he had received a briefing during which he was advised, *inter alia*, that pretrial and sentenced prisoners had "different work custodies" that they "progress through" and they were not supposed to be working together. He testified that he did not know pretrial prisoners "weren't supposed to mingle" with sentenced prisoners until two days before his trial, when a guard in the mess hall told him "you [pretrial prisoners] ain't supposed to be working with the [sentenced] prisoners...." The pretrial prisoners lived in cells separate from those of sentenced prisoners. Earlier during the presentencing hearing, some other information on appellant's work at the facility had been provided the court when the defense placed into evidence two letters from appellant's supervisors who were very laudatory in their remarks about appellant's attitude and performance of duty in the dining facility. The government trial counsel did not present any witnesses or other evidence on appellant's treatment while in pretrial confinement.

Based upon the evidence of record, the military judge made, *inter alia*, the following findings:

> from sentenced prisoners in employment and, to the maximum extent possible, in billets. Army Regulation 190-47, Military Police—The

[B]eginning on or about 22 November 1986, the accused was assigned to perform work at the confinement facility such as KP, cell block cleanup, shoveling snow and other tasks which were necessary to the operation of the facility.... [T]his work brought the accused into contact with sentenced prisoners. However, these were casual contacts while performing work necessary to the operation of the facility.... [T]he work performed by the accused was intended to accomplish a legitimate, nonpunitive government objective. There is no evidence of an improper intent ... to punish the accused....

The military judge then ruled that appellant had not been punished in violation of Article 13, UCMJ.

This court holds that the military judge's findings are supported by the record and that he correctly applied *United States v. Palmiter*. Because there was not a majority speaking for the Court of Military Appeals in *United States v. Palmiter*, this court must discuss, and apply to this case, the respective positions of the two participating judges.

In *United States v. Palmiter*, Judge Cox, author of the lead opinion, made his intentions clear: "While not retreating from those principles which have guided us in the past, the time has come to formulate new guidelines" in determining whether a pretrial detainee has been improperly punished prior to trial. *Palmiter*, 20 M.J. at 95. He quotes from the Supreme Court's opinion in *Bell v. Wolfish*, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979), wherein the Court noted:

> [I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective.

*Palmiter*, 20 M.J. at 95. In applying this standard to the facts in *Palmiter*, Judge

> United States Army Correctional System, para. 4-6d (1 Oct. 1978) (C1, 1 Nov. 1980) and (IO6, 14 Jun. 1985) [hereinafter AR 190-47].

Cox held that Palmiter had not suffered a violation of his Article 13 rights because the record disclosed no evidence of improper punitive intent by the confinement officials. Judge Cox stated that the commingling of pretrial and sentenced prisoners is but a factor to consider in determining whether or not the pretrial prisoner has been punished within the meaning of Article 13, UCMJ. Soon after *Palmiter*, Judge Cox applied this standard in *United States v. Destefano*, 20 M.J. 347 (C.M.A.1985), wherein the Court determined:

> There has been no showing that any of the actions taken by the guards ... was undertaken with a view towards punishing him. The military judge found, and the record supports, that each of the increasingly-severe constraints placed upon appellant's liberty was for the purpose of maintaining order and discipline within the confinement facility—a legitimate government purpose.

*Id.* at 349. The Court found that the conditions of Destefano's confinement did not rise to a violation of Article 13, with Chief Judge Everett concurring. This court believes the same analysis should be applied, and we reach the same conclusion, in this case—particularly where there is not only the *absence* of evidence suggesting a punitive intent on the part of the prison officials but there is evidence of their very laudatory comments regarding appellant's attitude and performance of duties. Significantly neither appellant nor his counsel contends that appellant's work details or "casual contacts" with sentenced prisoners were imposed as a "measure of retribution," a concern of Judge Cox in *United States v. Palmiter*, 20 M.J. at 96.

On the other hand Chief Judge Everett, concurring in the result in *Palmiter*, appears to scrutinize more closely the restrictive conditions imposed upon a pretrial confinee and the prison official's motives for imposing such conditions, to determine whether those conditions are "more onerous than necessary" within the meaning of Article 13. Both participating judges did agree that Palmiter had not been "punished" in the constitutional sense of *Bell v. Wolfish, supra.* The Chief Judge, also quoting from *Bell v. Wolfish*, 441 U.S. at 547–48, 99 S.Ct. at 1878–79, states that he has heeded the Supreme Court's warning that:

> [s]uch considerations are peculiarly within the province and professional expertise of corrections officers, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Palmiter*, 20 M.J. at 100 n. 2. Then, however, the Chief Judge concludes that "[s]ome of these conditions [imposed upon Palmiter] are far more onerous than would be required to assure the detainee's presence and so they violated Article 13." *Palmiter*, 20 M.J. at 99. As stated, Judge Cox apparently demonstrates greater willingness to grant deference to a confinement official's determination of necessary confinement conditions in the absence of an intent to punish, *Palmiter*, 20 M.J. at 96 (*"[u]nder no circumstance* should the prisoner be the one to dictate the terms and conditions of his confinement. This should always be left up to the correctional facility commanders and the respective services").[3] *See also United States v. Destefano*, 20 M.J. at 349 ("There has been no showing that any of the actions taken by the guards

---

3. Interestingly, this difference in emphasis on the proper appellate standard of review seems to echo the split in the Supreme Court on questions relating to permissive restrictions on a prisoner's liberty and privileges. The majority of Justices refuse to strictly scrutinize prison rules, requiring only that regulations be reasonably related to legitimate security interests, while the minority is critical of broad deference given to prison authorities. *See Turner v. Safley,* — U.S. —, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (Court upholds bar on most inmate-to-inmate correspondence but strikes down prohibition on inmates marrying except for "compelling reason"). The Supreme Court's approach in *Turney v. Safley* may be paraphrased as follows: A court should inquire whether a particular restriction or condition that burdens a prisoner's rights is "reasonably related" to legitimate penological objections, or whether it represents an "exaggerated response" by the prison authorities to those concerns.

which led to appellant's injury was undertaken with a view towards punishing him.")

■ We believe that a trial judge and an appellate court should grant deference to a commander's decisions on the operation of his correctional facility and inquire primarily whether an accused's testimony or other substantial evidence in the record indicates an "intent to punish" a pretrial detainee on the part of prison officials. However, until such time as the Court of Military Appeals provides additional guidance, the service courts of military review must continue to strictly apply the plain meaning of the language in Article 13. *See United States v. Daniels,* 23 M.J. 867, 869 (A.C.M.R.1987) (while the conditions of confinement at the Cumberland County Jail were perhaps unpleasant and lacked some of the amenities required by AR 190–47 for military confinement facilities, they met the standards of Article 13 and any other test of enlightened penal standards); *United States v. Peacock,* 19 M.J. 909 (A.C.M.R.), *pet. denied,* 20 M.J. 205 (C.M.A.1985) (compelling pretrial confinee to live and work with sentenced prisoners, in the absence of justifiable circumstances, violates Article 13, UCMJ); *United States v. Marston,* 22 M.J. 850 (A.F.C.M.R.1986) (while appellants were entitled to wear their rank while awaiting trial, the denial of this privilege was not such an onerous condition as to require additional administrative credit towards the sentence to confinement).

Significantly in the case at bar, neither counsel nor appellant contends that any of the conditions of restraint were "far more onerous than would be required to assure [appellant's] presence." This court holds that the findings by the military judge regarding the conditions of appellant's confinement are supported by the record and that the conditions were not so onerous as to constitute a violation of Article 13, UCMJ. *See United States v. Bruce,* 14 M.J. 254, 256 (C.M.A.1982) (the service court of military review should make findings pertinent to its resolution of an alleged Article 13 violation).

Appellant's counsel rely specifically upon another portion of the Chief Judge's opinion, in which he stated, in his view, "Article 13 generally prohibits commingling pretrial detainees with sentenced prisoners...." *Palmiter,* 20 M.J. at 100. It appears that the Chief Judge's aversion to "commingling pretrial detainees with sentenced prisoners" is based in large part upon his belief that "when a pretrial detainee is involuntarily placed 'in immediate association' with prisoners already convicted and sentenced, this stigma-by-association usually should be considered 'punishment or penalty other than arrest or confinement' in contravention of Article 13." *Palmiter,* 20 M.J. at 98. Again, the facts in the case at bar do not lead to the results feared by the Chief Judge. The military judge's findings make it clear that appellant was not placed "in immediate association" with sentenced prisoners, nor did he run the risk of suffering from a "stigma-by-association" from his "casual contacts" with the sentenced prisoners at the detention facility.

This court finds that appellant was not "commingled or placed in immediate association with sentenced prisoners" within the meaning of *United States v. Palmiter.* In *Palmiter,* 20 M.J. at 93, the accused was quartered with, wore essentially the same uniform as, and apparently intermixed for formations, meals, and routine work details with sentenced prisoners; in this case appellant testified that his association with sentenced prisoners was limited to casual contacts while he was performing work necessary for the operation of the facility. By definition, the term "commingle" means to blend thoroughly into a harmonious whole. Webster's Ninth New Collegiate Dictionary (1983). *See United States v. Nelson,* 39 C.M.R. 177 (C.M.A.1969) (pretrial prisoner compelled to work with, observe same work schedule and duty hours, and sleep in same hut as adjudged and sentenced prisoners); *United States v. Bayhand,* 21 C.M.R. 84 (C.M.A.1956) (pretrial prisoner required to perform same work as, under the same conditions as, in the same uniform as, and without distinction or difference from sentenced prisoners).

The military judge properly found that appellant had not been punished under Ar-

ticle 13, UCMJ and that he was not entitled to administrative credit on the sentence beyond the day-for-day requirements of *United States v. Allen.*

The findings of guilty and the sentence are affirmed.

Senior Judge ADAMKEWICZ and Judge SMITH concur.