UNITED STATES, Appellee,

v.

Lawrence M. DESTEFANO,
Seaman Recruit

U.S. Navy, Appellant.

No. 46,725.

NMCM 82 3467.

U.S. Court of Military Appeals.

Sept. 30, 1985.

For Appellant: *Lieutenant Commander Cynthia J. Clemens, JAGC, USN* (argued); *Lieutenant Commander William A. De-Cicco, JAGC, USN* and *Lieutenant Daniel Lippman, JAGC, USNR* (on brief); *Lieutenant Commander Georgia L. Winstead, JAGC, USNR.*

For Appellee: Major E.D. Clark, USMC (argued); Captain W.J. Hughes, JAGC, USN (on brief).

*Opinion of the Court*

COX, Judge:

Pursuant to his pleas, appellant was convicted by special court-martial military judge alone of attempting to escape from confinement; failing to go; disrespect to commissioned and petty officers; willfully disobeying a lawful order; assaulting a petty officer; and using provoking speech, all in violation of Articles 80, 86, 89, 91, and 117, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 886, 889, 891, and 917, respectively. The adjudged sentence of a bad-conduct discharge, confinement at hard labor for 3 months, and forfeiture of $300.00 pay per month for 3 months was approved by the convening authority except that, in accordance with a pretrial agreement, confinement in excess of 60 days was suspended for a period of 6 months.[1] The findings and sentence were affirmed by the United States Navy-Marine Corps Court of Military Review.

We granted review to consider the following issue:

---

1. The convening authority also credited appellant with 24 days of service toward the sentence for illegal pretrial confinement. This matter is not at issue here.

WHETHER APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT WHEN HE RECEIVED SEVERE SECOND DEGREE BURNS AND PERMANENT DISFIGUREMENT WHILE APPELLANT WAS IN PRETRIAL CONFINEMENT.

We hold that he was not and affirm the decision of the Court of Military Review.

Appellant was placed in pretrial confinement on May 6, 1981. He proved to be somewhat recalcitrant and, accordingly, was subjected to increasingly severe conditions of confinement. Ultimately he was placed in disciplinary segregation, yet he continued to create a disturbance in the cell block—referring to brig personnel in terms ranging from merely uncomplimentary to scurrilous.

On June 25, 1981, appellant created another disturbance in his cell and was removed for counseling by brig personnel. For this session, appellant was placed in restraints which he broke and removed. After being advised to cease his actions, he was returned to the cell; however, he continued his course of conduct—kicking his metal bed against the cell wall, which resulted in his removal from the furnished cell and placement in a "strip cell." This apparently had some positive effect because, apart from some additional untoward language, he remained quiet for the remainder of the afternoon. He was allowed to shower in the evening and was returned to his cell.

During the evening hours, appellant resumed his campaign of vituperation against brig personnel. At taps (2130 hours), a petty officer denied appellant a mattress. About one-and-one-half hours later, several other petty officers on watch decided to handcuff appellant to prevent him from whistling (apparently he was using his fingers).[2] Not surprisingly, appellant refused to cooperate in this action and committed at least one assault upon brig personnel as they came into his cell. Using a mattress as a shield, four petty officers entered the cell and, during the ensuing struggle, the mattress was discarded. Appellant engaged the petty officers in a wrestling match and continued to yell obscenities at them. Ultimately one of the guards was able to restrain him with a headlock, forcing him to the floor of the cell, while a second attempted to place handcuffs on him.

At that point, appellant began to scream that he was burning. He also asked the guards to let him up so he could be handcuffed. Notwithstanding his pleas, he continued to struggle and was finally restrained while he was lying on the floor of the cell, on his left side, with one petty officer holding his head, a second holding his feet, and a third placing him in handcuffs. Overall he was on the floor between 25 and 45 seconds. During this altercation, appellant sustained second-degree burns on his left arm. Although the guards obtained prompt medical treatment for him, he did suffer permanent injuries that will require future medical treatment.[3]

The particular cell in which this incident took place was located directly above a steam line for the brig. A leak in the steam line had caused the cell to become uncomfortably warm, but it was not considered to be hazardous by anyone who had inspected it, including medical personnel. The guards were cognizant of this condition when they put appellant in the cell. What they did not know, however, was that the steam line had caused the cell floor to become extremely hot.

Immediately following the incident a wall thermometer which was placed on the floor of the cell revealed that the floor temperature varied between 125 and 130 degrees Fahrenheit. In the course of an investigation into this incident, maintenance personnel from the base found that the cell floor was too hot to touch. It was this hidden

2. The Government has conceded that these actions were not sanctioned by regulation and were undertaken without authorization from any person in the chain of command.

3. The record does not indicate whether appellant was processed concomitantly with these proceedings to determine his disability. See 32 C.F.R. § 725.311.

condition that caused appellant to be injured while the guards attempted to restrain him.

■ Military due process prohibits a member in pretrial confinement from being punished, except for minor punishment during that period for infractions of discipline, Article 13, UCMJ, 10 U.S.C. § 813; *cf. United States v. Palmiter*, 20 M.J. 90 (C.M.A.1985). In addition, the eighth amendment to the Constitution of the United States and Article 55, UCMJ, 10 U.S.C. § 855, prohibit cruel and unusual punishments. However, the last two prohibitions are generally thought to refer to limitations on punishment following conviction. *See Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). Thus, we must first determine whether the guards' actions constituted punishment prior to trial.

■ There has been no showing that any of the actions taken by the guards which led to appellant's injury was undertaken with a view towards punishing him. The military judge found, and the record supports, that each of the increasingly-severe constraints placed upon appellant's liberty was for the purpose of maintaining order and discipline within the confinement facility—a legitimate government purpose. With the exception of denying appellant a mattress, there was no intent on the part of the guards to punish him for his misdeeds. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Furthermore, the conditions of appellant's confinement did not rise to a violation of Article 13.

The Government has candidly conceded that certain of the guards' actions were unauthorized. However, while the military judge appropriately characterized this incident as "tragic and inexcusable," it was not caused by the guards' failure to follow regulations. The appellant's burns did not result from the willful or intentional acts of the guards designed to deliberately injure him; instead, they were caused by his own misconduct and the guards' efforts to control his misbehavior. In sum, there has been no showing that appellant suffered pretrial punishment. *Cf. United States v. Suzuki*, 14 M.J. 491 (C.M.A.1983), *decision on further review*, 20 M.J. 248 (C.M.A. 1985).

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.