**UNITED STATES**

v.

**Victor V. FOSTER, 145 80 4005, Airman Recruit (E–1), U.S. Navy.**

**NMCM 91 2346.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 10 July 1991.

Decided 10 July 1992.

---

**14.** We also suggest military judges consider ordering bills of particulars to focus the issues.

LT Mary L. Livingston, JAGC, USNR, Appellate Defense Counsel.

Capt A. Diaz, USMC, Appellate Government Counsel.

Before FREYER, Senior Judge, and HOLDER and MOLLISON, JJ.

MOLLISON, Judge.

The appellant was tried by special court-martial. Consistent with his pleas of guilty, he was found guilty of two counts of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. The appellant elected to be sentenced by a military judge sitting alone.[1] During the pre-sentencing procedure, the appellant made an unsworn statement. Rule for Courts–Martial (R.C.M.) 1001(c)(2), Manual for Courts–Martial, United States, 1984. The first portion of the unsworn statement was made by the appellant's trial defense counsel. In it, trial defense counsel informed the court that at the brig the night before trial, brig personnel had physically abused the appellant, a pretrial detainee. Specifically, defense counsel stated that the appellant was thrown up against a wall, was thrown to the floor, was hogtied, and was left in a four point restraint for ten hours. Trial defense counsel informed the court that

---

1. The military judge sentenced the appellant to forfeit $502.00 pay per month for four months, to be confined for 120 days, and to be discharged with a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority suspended confinement in excess of 90 days, but otherwise approved the adjudged sentence.

these actions occurred after the appellant declined to discuss his case with brig personnel on the instructions of counsel. Record at 37. Trial defense counsel also had the appellant demonstrate to the military judge the appellant's wrists and the red rub or burn marks appellant had sustained as a result of being handcuffed.[2] Record at 38. In his sentencing argument, trial defense counsel pled for no punitive discharge and specifically requested that the appellant not be returned to the brig in light of his treatment there the night before. Record at 39. After the military judge announced his sentence, which included confinement for 120 days,[3] the trial counsel informed the military judge that trial counsel would be given a report concerning the matters in the unsworn statement. Unsatisfied, the military judge ordered trial counsel to report the matter to the commanding officer of the naval air station.[4] The military judge recognized this matter came to him in the form of an unsworn statement. Nonetheless, he implied that when he sent persons to confinement, he needed to be assured that the confinees would not be mistreated. Record at 40–41. From the record, we can safely infer the military judge took the recitation of events and the demonstration of the appellant's wrist seriously and considered them in awarding a sentence.

On the basis of the foregoing, the appellant now contends two errors were committed in his court-martial.[5] Firstly, appellant submits he was illegally subjected to punishment prior to trial and that the punishment was cruel and unusual. For this abuse, he argues his bad conduct discharge should be set aside. Alternatively, the appellant contends the bad conduct discharge should be set aside because he was afforded ineffective assistance of counsel. Specifically, he contends that his counsel failed to seek relief for the unlawful pretrial punishment appellant suffered; *viz*, administrative credit against the adjudged sentence. *United States v. Suzuki*, 14 M.J. 491 (C.M.A.1983).

Subsequent to trial the appellant and the Government filed with the Court statements respecting the events on the eve of the appellant's trial. The appellant's statement is consistent with the unsworn statement made by his counsel at trial. Appellant states that he was yelled at by the brig duty officer when appellant declined to discuss his case; that he was informed there was no use in preparing his uniform for trial because appellant would never get out of the brig; that after appellant returned to his cell, the brig duty officer yelled at appellant that he was a troublemaker; that eight to ten petty officers on brig watch entered appellant's cell, threw him to the floor, sat on him, and bound his wrists and ankles up behind him; and, that appellant was left in this condition from 2130 to 0800 the next morning when he was removed for his court-martial. Appellant also states that at 0200 the watch sent for a corpsman because the appellant's wrists were bleeding. A medical corpsman loosened the leather cuffs, but after the corpsman left, the duty officer again tightened the cuffs. Appellant states his skin was rubbed raw,

---

**2.** The appellant made the balance of his unsworn statement and did not speak of the events of the preceding evening.

**3.** The appellant was awarded 26 days credit for service of pretrial confinement. *United States v. Allen*, 17 M.J. 126 (C.M.A.1984). Additionally, the military judge awarded the appellant 8 days additional credit against his sentence in accordance with R.C.M. 305(k) for reasons unrelated to the matters recited in his unsworn statement.

**4.** We may infer that the officer in charge of the brig reports in some manner to the station commanding officer.

**5.** I. THIS COURT SHOULD SET ASIDE THE BAD CONDUCT DISCHARGE BECAUSE APPELLANT SUFFERED UNLAWFUL PRETRIAL PUNISHMENT WHERE HE WAS HOGTIED FOR 10 HOURS IN HIS CELL FOR REFUSING TO ANSWER QUESTIONS ABOUT HIS COURT–MARTIAL CASE.
II. ALTERNATIVELY, THIS COURT SHOULD SET ASIDE THE BAD CONDUCT DISCHARGE BECAUSE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL DEFENSE COUNSEL FAILED TO SEEK RELIEF FOR THE UNLAWFUL PRETRIAL PUNISHMENT APPELLANT SUFFERED.

his arms were bruised from being thrown against the floor and wall, and that he was sore all over from being bound up in such an awkward position. Appellant also states he has never seen any investigation into the incident, but he asserts that one month later the duty officer was relieved of his position and reassigned to duties which did not require him to interact directly with prisoners.

Predictably, the affidavits of the brig personnel filed by the Government paint a different picture of the events. These affidavits may be summarized as follows: At about 2110, the brig control center supervisor ordered the appellant to cease using an ironing board. The appellant became boisterous and refused. At the appellant's request, the brig duty officer (BDO) was summoned. The BDO reported to the area and instructed the appellant not to argue with staff and to obey orders. The appellant returned to his cell and slammed the door. The BDO instructed control center personnel to monitor the appellant by listening through the brig intercom system. Control center personnel heard the appellant utter through the echoes in the brig: "... your ass ... [the name of the BDO] ... control ... thinks he's a bad ass ... piece of shit." Control center personnel informed the BDO what the appellant had said. The BDO and other brig personnel entered the appellant's cell and placed him in four-point restraints at 2137. At 2200, the BDO telephoned the officer in charge (OIC) of the brig. The OIC authorized the BDO to maintain the restraints until the appellant calmed down and acted in an orderly manner. The OIC was aware that the appellant was already in a desegregation cell for previous violations of brig rules, disrespect, harassment of the staff and provoking words and gestures. The OIC also had knowledge of appellant's two previous assignments to the brig—one of which was due to violent behavior. The BDO labels appellant's claim that he had questioned the appellant about his pending court-martial as "totally false."

▇ Article 13 of the Code prohibits punishment before trial. Art. 13, UCMJ, 10 U.S.C. § 813. Article 55 prohibits cruel or unusual punishment. Art. 55, UCMJ, 10 U.S.C. § 855. The latter is generally thought to refer to limitations on punishment following conviction. *United States v. DeStefano*, 20 M.J. 347, 349 (C.M.A. 1985). Pretrial imposition of punishment—cruel, unusual or otherwise—can be made the basis of a motion for appropriate relief.[6] Article 36, UCMJ, 10 U.S.C. § 836; R.C.M. 905, 906. In order to obtain relief, the accused has the burden of proving by a preponderance of the evidence that he was subjected to unlawful pretrial punishment, and a motion for appropriate relief from claimed pretrial punishment must be raised before adjournment of trial or the motion is waived.[7] *United States v. Walker*, 27 M.J. 878 (A.C.M.R.), *aff'd*, 28 M.J. 430 (C.M.A. 1989); R.C.M. 905(c), (d), 906. *See also United States v. Latta*, 34 M.J. 596, 597–98 (A.C.M.R.1992) (Arkow, J., dissenting). There are some exceptions to the waiver rule. For example, it has not been applied in the face of intimations that the staff judge advocate and trial defense counsel entered into a *sub rosa* agreement not to litigate the issue, or when the effective assistance of trial defense counsel has been questioned. *United States v. Cruz*, 25 M.J. 326 (C.M.A.1987).

▇ The appellant raised the matter of his claimed pretrial treatment by means of an unsworn statement during the presen-

---

**6.** The intent of the officials imposing the conditions of confinement is a significant factor, but not the only factor, in determining whether the conditions violate Article 13. A court reviewing such conditions must decide whether the conditions are reasonably related to a legitimate governmental objective, and if they are not, it may permissibly infer they are imposed for purposes of punishment. *United States v. James*, 28 M.J. 214 (C.M.A.1989). In making this determination, some deference should be given to the decisions of corrections officials on the procedures and conditions necessary for the proper, safe operation of a confinement facility. *United States v. Herrin*, 32 M.J. 983 (A.C.M.R.1991).

**7.** A servicemember cannot waive the protection of Article 13, *United States v. Palmiter*, 20 M.J. 90 (C.M.A.1990) (Per Cox, J., with Everett, C.J., concurring in the result), however, he may waive raising the issue at his court-martial.

tencing procedure. He made no motion for appropriate relief and offered no evidence to support the claim. The unsworn statement was not itself evidence. *United States v. Breese*, 11 M.J. 17, 24 (C.M.A. 1981). There is, however, no intimation of a *sub rosa* agreement between counsel not to litigate this issue in this case. As noted, trial defense counsel *did* bring the matter to the sentencing authority's attention.

■ As to the issue of the competence of appellant's counsel, we observe that the effective assistance of trial defense counsel is presumed, and an appellant must establish both serious incompetence and prejudice before he is entitled to relief. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Courts of Military Review will consider the totality of the circumstances in judging claims of ineffective assistance of counsel and normally will not "second-guess the strategic or tactical decision of trial defense counsel, especially when the strategy used or tactics employed are not on their face unreasonable or unworkable." *United States v. Haston*, 21 M.J. 559, 563 (A.C.M.R.1985), *aff'd*, 24 M.J. 313 (C.M.A. 1987), *cert. denied*, 484 U.S. 955, 108 S.Ct. 348, 98 L.Ed.2d 374 (1987). *See also United States v. Bono*, 26 M.J. 240 (C.M.A. 1988).

■ Trial defense counsel did not dismiss the appellant's pretrial treatment as a frivolous matter. *See United States v. Brown*, 33 M.J. 743 (A.C.M.R.1991). Reiterating, trial defense counsel brought the circumstances of the treatment of the appellant to the attention of the sentencing authority, and he argued that based on the events of the night before, the appellant should not be returned to the brig. Thus,

he chose the tactic of placing the pretrial treatment into the sentencing crucible with the objective of avoiding the imposition of any further confinement, vice pursuing a nominal arithmetic credit.[8] Trial defense counsel obviously knew how to move for administrative credit against a sentence to confinement because he had successfully done so earlier in the trial on an unrelated matter.[9] He also knew that he would have to produce evidence to prove these claims in order to get administrative credit ordered. Record at 13–14. By bringing these matters to the trial judge's attention through the vehicle of the unsworn statement, neither he nor his client risked being questioned or cross-examined on them. R.C.M. 1001(c)(2)(A).

The essence of the appellant's claim is, then, that his counsel made a strategic error in the way he attempted to employ appellant's pretrial treatment in the interest of the appellant. It is this very type of strategic call that we are loathe to second guess. We find that trial defense counsel's actions were well within the bounds of reasonable tactical judgment and did not fall below the level of reasonable professional assistance. *See United States v. Babbitt*, 26 M.J. 157 (C.M.A.1988).

■ In the absence of collusion between the parties to thwart the proper consideration of issues at trial, the ineffective assistance of counsel, or any other basis to suggest the waiver rule should be abandoned in order to do justice and preserve the integrity of the court-martial process, we choose to apply it. We conclude appellant was not deprived of the effective assistance of counsel and waived a claim on appeal that the events of the evening before his trial warrant further relief against his sentence.[10]

---

**8.** Trial defense counsel might reasonably have assumed the military judge would not have let the appellant have both a reduced sentence and administrative credit.

**9.** *Supra* note 3.

**10.** We need not determine whether the appellant was subjected to improper pretrial punishment. If, in fact, the appellant was subjected to

improper pretrial punishment, he brought the matter to the attention of the trial judge and had it considered. Having chosen to proceed in the fashion he did, no further relief is required.

Finally, we note that not all violations of Article 13 require a drastic remedy, such as setting aside a punitive discharge. *United States v. Villamil-Perez*, 32 M.J. 341, 343–44 (C.M.A. 1991); *United States v. Hatchell*, 33 M.J. 839, 843 (A.C.M.R.1991). Setting aside the appel-

The waiver rule is neither hyper-technical, nor a trap for the unwary. *United States v. Sanders*, 33 M.J. 1026, 1029 (N.M.C.M.R.1991). Had he desired judge-ordered relief against his sentence on the basis of pretrial treatment, the appellant was obliged to state so before the trial court where the matter could have been fully aired, evidence taken, and essential findings entered.[11] Equally significant, the failure to seek specific relief at the time of sentencing tends to limit the kind of relief a court might otherwise fashion to remedy a particular wrong. *See United States v. Spriddle*, 20 M.J. 804 (N.M.C.M.R.1985). For example, the appellant has served his confinement. The confinement feature of his sentence is the logical feature against which a claim of illegal pretrial confinement would be remedied. An accused may engage in gamesmanship in an attempt to limit alternative remedies, but we are not inclined to encourage it. *See United States v. Norment*, 34 M.J. 224, 227 (C.M.A.1992) (Crawford, J., concurring).

The findings and the sentence as approved on review below are affirmed.

Judge HOLDER concurs.

FREYER, Senior Judge (dissenting in part):

The appellant was found guilty, in accordance with his pleas, of two absences without leave and was sentenced to confinement for 120 days, forfeiture of $502.00 pay per month for 4 months, and a bad-conduct discharge. In accordance with a pretrial agreement, the convening authori-

ty suspended confinement in excess of 90 days but otherwise approved the sentence. It appears that, on the eve of trial, after an argument with a brig staff member over ironing a uniform, the appellant was placed in four-point physical restraints and left so for about 10 hours' time inside a cell at the Naval Brig, Naval Air Station Memphis, Millington, Tennessee.

The appellate defense counsel challenges the failure of the trial defense counsel to seek "meaningful relief" for the above-described maltreatment from the military judge, and he now seeks such relief from this Court. The record on appeal contains affidavits from the appellant, the officer-in-charge of the brig, and three brig staff petty officers, including the duty petty officer directly responsible for the maltreatment, who, we are informed, was relieved of duties involving contact with prisoners after a command investigation of the incident concerning the appellant.

Unlike the Government, I regard the affidavits of those with knowledge[1] of the events relating to the confinement of the appellant in restraints to be not a justification of such confinement, but a virtual confession of wrongdoing. Taken together, the substance of them is that the appellant was placed in restraints because, after his custody had already been firmly secured by placing him in a disciplinary segregation ("D-seg," as distinguished from administrative segregation, or "A-seg") cell, he was overheard muttering uncomplimentary language concerning the brig staff. These

lant's bad-conduct discharge on the basis of the events on the night before his trial would constitute an unjustified windfall. See *Villamil-Perez*, 32 M.J. at 344.

11. Courts of Military Review have the authority to order post-trial evidentiary hearings. Such hearings have been useful tools in resolving post-trial claims of command influence and ineffective assistance of counsel and may even be useful in resolving Article 13 violations. *United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991); *Cruz*, 25 M.J. at 328 n. 1; *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). But such hearings are a poor substitute for action at trial. Accordingly, they should generally be reserved to issues that were not susceptible to

resolution by the trial court because the matter was not reasonably discoverable during trial or to issues that go to the integrity of the military justice process itself. The appellant has not requested a post-trial evidentiary hearing, and we perceive no benefit at this late date to ordering one. The appellant already raised the matter at trial and had it considered in connection with the sentence in his case. He is entitled to nothing more.

1. The affidavit of Lieutenant Bogle, the brig officer-in-charge, is deemed bureaucratically self-serving, based entirely on hearsay and opinion, and, therefore, in my judgement, entitled to no evidentiary weight.

affidavits plainly refute any suggestion that, once in his cell,[2] he was being either self-destructive or physically violent towards anyone or anything.

Giving all due deference to the responsibilities of a confinement facility staff in preserving order, and even construing the record most favorably to the Government, I can conceive of no rational purpose for using physical restraints in the situation disclosed by this record, and for keeping them applied for such a long period of time, except that of punishment. In addition to finding a violation of Article 13, UCMJ, 10 U.S.C. § 813, I also find a clear violation of Article 4309, Department of the Navy Corrections Manual (Secretary of the Navy Instruction 1640.9A, dated 16 February 1983)[3], of which judicial notice is hereby taken. Assuming that the evidence on a motion at trial would have come out as it did in the factual affidavits (*i.e.*, less the affidavit of Lieutenant Bogle), I am, in the words of the standard set forth in the Government's brief, "convinced that there was no reasonable probability of a different result had the matter been properly raised at trial. *United States v. Bono*, 26 M.J. 240 (C.M.A.1988)."

That being so, I am perplexed by the manner in which the issues raised by the maltreatment of the appellant were dealt with at trial. Whatever ethical duty attorneys and judges may have to attempt to right institutional wrongs affecting the legal system, the duty of a defense counsel to a particular client in a particular case, unless the client instructs otherwise, is to seek all available relief, especially when the grounds therefor are as manifest as they were in this case. Here the matter was raised in an unsworn statement, undoubtedly one of the least convincing means by which a prisoner can complain against his jailers. Although, to his credit, the military judge took the allegations, *qua* allegations, seriously in an administrative sense, it is impossible to tell just what credence he gave them, or what, if any, mitigating effect they had on the substantial confinement adjudged (120 days of confinement for 77 days of absence without leave).

The record does not disclose whether or not the defense counsel was aware of the *Suzuki*[4] line of cases authorizing "meaningful relief" for Article 13 conditions of confinement violations, but, if ever there was a case for raising such a motion, it

---

**2.** There is no substantial evidence of any need for restraints even before the appellant was placed in the cell.

**3.** 4309. Instruments of Restraint

 1. Instruments of restraint of any type shall not be used as punishment.

 2. Normally, restraining devices are not required in the transfer of prisoners. As a precaution against escape of dangerous or escape-minded prisoners, handcuffs and transportation belts may be utilized. In the case of violent prisoners, the additional use of leg irons is authorized. Movement of prisoners requiring this restraint at a base or station shall be limited to specific occasions authorized by the commanding officer. Use of other control methods, e.g., straight jacket, must be authorized by a medical officer.

 3. *Instruments of restraint are not normally authorized to be used within the security perimeter of the brig except when preparing to move a prisoner outside the facility, or to regain control during a disorder, or when a prisoner is violent and self-destructive.* The senior staff member on duty at the brig shall personally observe, and is the only one autho-

rized to order, the use of restraints in these situations. *If restraints are used as a result of a disorder or a violent prisoner, the commanding officer shall be notified immediately. The commanding officer or the command duty officer shall make an immediate on-site visit to observe that the use of restraints is appropriate and shall report that use to his/her immediate superior in command.* An incident report shall be submitted as directed in Article 8116 of this Manual if the situation warrants it. *In any case the senior staff member on duty at the brig shall ensure that restraints are removed as soon as possible.*

 4. Chains (irons, single or double) affixing a prisoner to a wall or other appurtenance, or other restraining devices not mentioned above are prohibited.

 5. Restraints will not normally be used in the transportation of prisoners on station, i.e., meals, dispensary or hospital, station office interviews, court-martial proceedings, etc. Care should be taken not to display restrained personnel unnecessarily to the public. (Emphasis supplied.)

**4.** *United States v. Suzuki,* 14 M.J. 491 (C.M.A. 1983).

would seem to be this one. There is no evidence from the Government to suggest that the failure to raise such a motion resulted from a tactical decision.[5] There should also be no question of duplication of relief in defense counsel's arguing simultaneously that the appellant should not be sent to the brig to prevent future maltreatment, and that he should also be given meaningful relief to redress past maltreatment. Neither is there necessarily such duplication in raising the same matter both as a matter in mitigation and as a basis for credit; in fact, it is quite common for members to be instructed that pretrial confinement is a matter in mitigation, *see United States v. Balboa*, 33 M.J. 304 (C.M.A.1991), notwithstanding the entitlement to *Allen*[6] credit therefor.[7] Finally, the timing of this Article 13 violation negated any opportunity for the appellant to raise the issue of illegal punishment before trial during the pretrial confinement; hence, the failure to do so provides no "evidence" that he was not illegally punished. *Cf. United States v. Palmiter*, 20 M.J. 90 (C.M.A.1985). Apart from any question of technical inadequacy of counsel, I simply deem this an inappropriate case in which to apply waiver because, in my view, the Article 13 violation was egregious, and both it and the entitlement to relief, at least in principle, are manifest from the record presently before this Court. *See United States v. Cole*, 31 M.J. 270 (C.M.A.1990).

Turning to the question of relief, I see no need for a *Dubay*[8] hearing, as the facts admitted in the factual affidavits presented by the Government, in my opinion, establish the Article 13 violation as a matter of law. The appellant, nevertheless, virtually conceded the appropriateness of a bad-conduct discharge, and he expressed no appetite for continued Naval service but a desire to get on with his life. It appears that, at the time the convening authority acted, the appellant should have been within 3 days of being released from confinement. This conclusion results from adding to the 38 days of confinement which ran from the date of trial to the date of action the 34-day *Allen* and Rule for Courts–Martial 305(k) credits and a 15-day "good-time" credit, for a total of 87 days. The exact date when the appellant presumably entered a no-pay status is not known, but unlike *United States v. Valead*, 32 M.J. 122 (C.M.A.1991), this case may offer some opportunity for at least token relief in the area of forfeiture of pay. In my opinion, setting aside the forfeiture of pay is the proper remedy, from among the limited options still available, for the maltreatment to which this appellant was subjected. The inability at this time to grant more meaningful relief without also granting extravagant relief is frustrating, but responsibility for it must rest with the defense for failing to seek such meaningful relief in a timely manner.

5. As regards any tactical choice between mitigation and credit, it should be noted that, where, as here, an accused has a pretrial agreement for suspension of confinement over a certain amount, the benefit of mitigation will be enjoyed only if it reduces the sentence below the unsuspended amount (unless, of course, the suspension is vacated), whereas a credit will be applied first against the unsuspended confinement. As indicated in footnote 7, however, no such election may be necessary if both avenues are pursued.

6. *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

7. As the court in *United States v. Balboa* points out, it is proper to instruct members on the *Allen* credit and let them balance the mitigating value of the pretrial confinement against any neutralizing effect of the *Allen* credit. Presumably, military judges do likewise. *Quaere*, whether, in the case of an Article 13 violation, the astute defense counsel would present evidence of the conditions of confinement as a matter in mitigation in presentencing without reference to Article 13, then move for *Suzuki* "meaningful relief" with reference to Article 13 after sentencing but before adjournment. Unlike the automatic *Allen* credit, *Suzuki* "meaningful relief" is comparatively rare and results from the Government's own misconduct; hence, an overabundance of the concern that an accused somewhere might theoretically gain a small advantage, which preoccupied the *Balboa* majority, would seem to be unjustified in this area.

8. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

On the whole record, I would affirm the findings of guilty and the sentence, less the forfeiture of pay.